IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

**IN ADMIRALTY**

HUNTINGTON NATIONAL BANK,                              Case No.: 0:25-cv-61018-WPD

     *Plaintiff*,

v.

M/Y SOMETHING ABOUT MERI, her engines, machinery,
tackle, apparel, boats, furniture, equipment,
rigging, freights, and all other necessary
appurtenances, etc., *in rem*, and STANLEY R. KALISH,
*in personam*,

     *Defendant(s)*.

_____/

**PLAINTIFF'S RENEWED MOTION FOR CONTEMPT AND MOTION FOR
PROTECTIVE ORDER AGAINST DEFENDANT STANLEY R. KALISH
AND NON-PARTY DANIELLE MORRON**

Plaintiff, Huntington National Bank ("Huntington"), by and through undersigned counsel,

respectfully renews its Motion for Contempt and Motion for Protective Order against non-party

Danielle Morron ("Morron") and *in personam* Defendant Stanley R. Kalish ("Kalish") for their

acts of extortion committed against Huntington and its counsel and willful and deliberate violations

of this Court's Orders, and in support thereof states as follows:

**INTRODUCTION**

This Court's directives during the June 6, 2025 hearing, later memorialized within the

Report and Recommendation on the June 6 hearing (ECF No. 52) and Order approving same (ECF

No. 57) issued clear and unambiguous orders designed to preserve the integrity of these admiralty

proceedings. Specifically, the Court prohibited the use of AI-generated pleadings containing

fabricated legal citations or ghost-written motions and/or correspondences, and made clear that

non-party Morron cannot represent Kalish in these proceedings or otherwise file pleadings on his behalf.

Rather than comply with these explicit judicial directives, Morron and Kalish have engaged in a coordinated campaign of defiance that demonstrates willful contempt for this Court's authority. Since the June 6 hearing, this pattern of violations has not merely continued—it has dramatically escalated. Huntington and its counsel have been subjected to an increasing barrage of AI-generated pleadings, extortionary communications, and frivolous motions filed by Kalish and/or Morron that violate every aspect of the Court's orders while employing increasingly sophisticated methods to circumvent judicial oversight.

## FACTUAL BACKGROUND

1.    On May 29, 2025, this Court scheduled a hearing on all pending motions in the above-captioned matter and in the related case filed by Kalish against Huntington, Case No. 0:25-cv-61033-WPD.

2.    During the May 29, 2025 hearing, this Court explicitly ordered that non-party Morron, who is neither an attorney or a party to this case, cannot represent Kalish in either matter and instructed the undersigned to communicate directly with Kalish himself.

3.    Despite the Court's clear admonishment to Morron at the May 29 hearing, Morron escalated her interference in this case by subsequently unleashing a torrent of email communications, discovery requests, and court filings to Huntington and the undersigned's office.

4.    On June 6, 2025, United States Judge Patrick M. Hunt ("Judge Hunt") conducted a hearing addressing Morron's systematic harassment of Huntington and its counsel through AI-generated pleadings, frivolous discovery demands, and threatening communications ("June 6 Hearing").  A copy of the June 6 Hearing transcript is attached hereto as **Exhibit A**.

5.      During the June 6 Hearing, Judge Hunt specifically instructed Morron to cease from filing AI-generated pleadings on Kalish's behalf, warning "[y]ou need to be very careful. If you are filing things in federal court and you're not a lawyer and you're not a party, that could be a serious ethical violation that could be a criminal violation. You need to not do that ..." See Id. at pg. 15 ln. 5 -14.

6.      Following the June 6 Hearing, Judge Hunt issued a Report and Recommendation (ECF No. 52) ("Report and Recommendation") which contained several critical prohibitions:

- AI-Generated Content: The Court specifically warned about its "inherent authority to sanction the misuse of AI when it affects the Court's docket, case disposition, and ruling," noting consequences "up to and including the dismissal of a case."

- Ghost-Writing: The Court observed "credible allegations that the pleadings filed thus far are not entirely Defendant's own" and cautioned that non-party ghost-writing "could be engaged in the unauthorized practice of law."

- Future Pleadings: The Court recommended that Kalish's future motions should be "written by either legal counsel or Dr. Kalish himself."

7.      The Court entered its Order Approving Report of Magistrate Judge (ECF No. 57), adopting these findings as the Court's official position.

8.      Despite having actual knowledge of this Court's Orders and directives during the June 6 Hearing, both Kalish and Morron have willfully and deliberately violated this Court's clear terms of the Orders.

9.      Rather than comply with the Court's directives, Kalish and/or Morron have filed at countless additional pleadings since June 6, 2025 which exhibit the identical AI-generated

characteristics, fabricated legal citations, and ghost-written authorship that the Court specifically warned against, including:

- ECF No. 54: Kalish's Objections to Report and Recommendation contains numerous fabricated or misquoted citations to alleged case law, including:

  o *Venus Lines Agency v. MN Vertigo*, 234 F.3d 1225 (11th Cir. 2000) - Cited by Kalish to support venue arguments, but the issue of venue was not addressed in the opinion.

  o *Freret Marine Supply v. M/V Enchanted Capri*, 2002 WL 31246762 (E.D. La. Oct. 4, 2002)  - Citation retrieves a completely unrelated case that does not stand for the proposition cited by Kalish.

  o *Silverstar Enterprises, Inc. v. M/V SARAMACCA,* 82 F.3d 666, 668-69 (5th Cir. 1996) - Incorrect case name; real case is *Silver Star Enters. v. Saramacca MV*, and it does not discuss the subject for which Kalish cites.

  o *Bank One, Louisiana N.A. v. M/V Mr. Dean*, 293 F.3d 830, 832-33(5th Cir.2002)  - Misstated case name; even when corrected, the legal holding does not match the claim made in the motion.

  o *Marine Midland Bank, N.A. v. M/V Sea Crest*, 633 F. Supp. 682 (S.D. Tex. 1986) - The citation retrieves an unrelated postal service case; the cited case appears to be completely fabricated.

Case No.: 0:25-cv-61018-WPD

- ○ *Commercial Nat'l Bank v. Dufresne*, 763 F. Supp. 2d 1222 (M.D. Fla. 1991) - No such case exists under this citation; other similarly-named cases are irrelevant.

- ○ *Barclays American Corp. v. Brown*, 605 F.2d 1355 (5th Cir. 1979) - Citation pulls up a different, unrelated case; the cited case name does not exist.

- ECF No. 69: Kalish's Motion to Dismiss cites to *Marine Midland Bank v. Portnoy,* 1978 AMC 931 (S.D.N.Y.1978), but this case does not exist as cited.  The case name and citation partially match two unrelated cases and neither case supports the holding cited by Kalish, even remotely.

- ECF  No. 94: Memorandum of Law in support of Motion to Strike  filed by Kalish cites to B*eaufort Shipping Ltd. v. Motor Vessel Entreport,* 140 F. Supp. 2d 1340 (S.D. Fla. 2001), but neither this case name nor citation exist anywhere in any legal database, indicating it was fabricated by AI.

- ECF No. 96: Memorandum of Law in support of Kalish's Motion to Dismiss cites to *In re Olympic Mills Corp.*, 477 F.3d 1, 11 (1st Cir. 2007) and includes an alleged direct quote from the case.  While this case name exists, the quote used by Kalish does not appear anywhere in the actual opinion, nor does the proposition it stands for, suggesting AI-generated text.

10.    These post-hearing filings demonstrate escalating contempt, as Kalish and Morron have now filed more AI-generated pleadings with fabricated citations since the June 6 hearing than

they filed before it, showing complete disregard for this Court's authority and deliberate escalation of the prohibited conduct.

11.     The very conduct the Court warned could constitute unauthorized practice of law—non-party ghost-writing of AI-generated pleadings with fabricated citations—has not only continued but dramatically escalated since the Court's explicit warnings, with more fabricated citations appearing in post-June 6 pleadings than in all previous filings combined.

12.     The timing, content, linguistic patterns, and methodical coordination of these pleadings, combined with the extensive pattern of fabricated citations that could only be generated by artificial intelligence, raise serious questions about whether Kalish is actually the author of pleadings filed in his name, or whether Morron continues to ghost-write AI-generated pleadings on Kalish's behalf with the help of AI, in direct violation of this Court's warnings about unauthorized practice of law.

13.     Since the June 6 Hearing, Huntington and its counsel have received countless of emails purportedly from "Stanley Kalish" but exhibiting the identical characteristics, arguments, and AI-generated content previously sent directly by Morron.  *See* e.g. **Exhibit B Composite**.

14.     These emails demonstrate a coordinated effort to circumvent the Court's express prohibition on Morron's communications using Kalish's email account as a conduit for her continued harassment campaign.

15.     The emails contain the same conspiracy theories, fabricated legal citations, and harassing language that characterized Morron's pre-hearing communications, evidencing her continued authorship despite the purported change in sender identity.

16.     The emails sent from Kalish's account have explicitly forwarded the exact emails previously sent by Morron directly.

17.     It appears clear that the emails received by Huntington and its counsel from Morron and Kalish are drafted by the same person – Morron.

18.     Remarkably, on July 21, 2025, Morron filed a Motion to Disqualify the undersigned counsel that contains a stunning admission by Morron of the very conduct this Court prohibited. [ECF No. 101]  In Exhibit "H" to that motion, Morron explicitly confesses to using artificial intelligence to draft pleadings, stating: "There is no rule or statute that prohibits a pro se litigant from using artificial intelligence tools to assist in drafting pleadings... My ChatGPT just helps me put my word salad together so you all can digest it easier than my litigation freestyling." [ECF No. 101, p. 60]

19.     Perhaps most tellingly, Morron's defiant statement "If this case now amounts to ChatGPT vs. ChatGPT, so be it" demonstrates her complete disregard for this Court's authority and her willful intent to continue the prohibited conduct regardless of judicial directives. *Id.*

20.     This admission, filed three weeks after the Court's adoption of Judge Hunt's warnings about AI-generated content, constitutes clear evidence of willful and deliberate contempt of court.

21.     As if the harassment from endless AI-driven filings is not already unacceptable on its own, Kalish and/or Morron's tactics of intimidation within their more recent communications have risen to the level of extortion.  *See* **Composite Exhibit C**.

22.     Specifically, on June 8, 2025, Kalish and/or Morron emailed the undersigned a demand for Huntington and its counsel to provide either (1) "a notarized letter … authorizing immediate and unconditional release of the vessel as-is …. return of all property removed from the vessel, and a *$50 million uncontested damages award ...."* or (2) provide responses to Kalish's

and/or Morron frivolous, overly burdensome, and AI-generated discovery requests. (emphasis added). *See* **Exhibit C**.

23.     Within the same email and directly after inputting the demand for a $50 million damages award, Kalish and/or Morron offered that in return for the above, he/she would agree to "in private, sign an NDA, and will further agree to drop and/or not continue to pursue any ***Federal criminal charges*** against Frank Kups, Craig Moore, Joseph Gumbs, Rupert Gregory, Rick Obey Yacht Sales, Robyn Twinam[1], Legend Yacht Transport, VI Marine Towing and Salvage, and the ***Huntington Bank***, and so as to ***not be forced to make such details public record in future court proceedings*.**" (emphasis added). *See* Id.

24.     Kalish's and/or Morron's communications to the undersigned via electronic mail, threatening federal criminal prosecution and reputational harm to Huntington and its counsel unless Huntington and its counsel complies with his and Morron's demands (including paying a $50 million damages award), constitute a clear case of extortion in violation of both Florida law[2] and Federal law.[3]

25.     Moreover, the post June 6 Hearing emails, whether sent directly from Kalish's account or forwarding Morron's communications, continue to rely heavily on AI-generated content containing fabricated legal citations and positions in direct violation of the Orders' prohibition.

---

[1] Robyn Twinam currently serves as the Vice President and Default Services Group Manager of The Huntington National Bank.

[2] "Whoever … by a written or printed communication, maliciously threatens to accuse another of any crime or offense, or by such communication maliciously threatens an injury to the … reputation of another, or maliciously threatens to expose another to disgrace … with intent thereby to extort money or any pecuniary advantage whatsoever, or with intent to compel the person so threatened, or any other person, to do any act or refrain from doing any act against his or her will, commits a felony of the second degree …." *See* § 836.05, Fla. Stat.

[3] "Whoever, with intent to extort from any person, firm, association, or corporation, any money or other thing of value, transmits in interstate … any communication containing any threat to … reputation of the addressee or of another … or any threat to accuse the addressee or any other person of a crime, shall be fined under this title or imprisoned not more than two years, or both." *See* 18 U.S. Code § 875(d).

26.     On June 10, 2025, the undersigned sent to Kalish (and purportedly also Morron) a cease-and-desist letter, formally demanding that the two cease sending harassing and threatening emails to the firm and putting them on notice that Huntington would take further immediate action should their conduct continue.  *See* **Exhibit D**.

27.     In an attempt to avoid further litigation with Kalish and Morron (who is now an alleged self-claimed salvage lienor on the Vessel), on June 13, 2025, Huntington made a good faith effort to resolve the matter by sending a confidential settlement communication.

28.     On June 17, 2025, Morron acknowledged receipt of Huntington's settlement communication and oddly enough, proposed to meet with the undersigned "alone" and without Kalish or anyone else present to conduct a settlement conference – despite the Orders prohibiting Morron from communicating to the undersigned on Kalish's behalf about this case.  **Exhibit E**.

29.     This same day, the undersigned sent an email directly to Kalish attempting to confer regarding Huntington's (1) motion for leave to amend to add M/Y Scratch, LLC as a defendant to this action, (2) motion for judgment on the pleadings as to liability, and (3) motion to have the vessel surveyed to assess the value.  *See* **Exhibit F**.

30.     Kalish responded to the undersigned's June 17, 2025 conferral email with an evidently AI-generated response, reiterating the same conspiracy theories sent by Morron to Huntington and its counsel previously.  *See* **Exhibit F**.

31.     The following day, Morron also responded to the undersigned's June 17, 2025, conferral email, despite the communication being sent to only Kalish directly, repeating her baseless accusations against Huntington and its counsel and threats of reputational harm.  *See* **Exhibit F**.

32.     Morron's ongoing harassment campaign has recently intensified by Morron targeting the undersigned in his personal capacity, requesting to follow the undersigned's personal and private social media account.  *See* **Exhibit G**.

33.     Morron also filed complaints with the Florida Bar against the undersigned counsel which include the same AI-prepared arguments and claims previously raised by Morron in other pleadings and correspondence. *See* **Composite Exhibit H.**

34.     In addition to directing her actions at the undersigned personally, Morron has escalated her harassment campaign by posting comments on the undersigned's law firm's business Instagram account, making improper public statements relating to the current pending litigation. *See* **Exhibit I**.

35.     Morron and Kalish have repeatedly demonstrated a willful disregard for the Court's authority through deliberate and escalated violations of this Court's orders, continuing to drive up litigation costs and warranting this Court's entry of a protective order and finding of both in contempt of court.

## MEMORANDUM OF LAW

**I.     HUNTINGTON IS ENTITLED TO THE COURT'S ENTRY OF A PROTECTIVE ORDER AGAINST DEFENDANT KALISH AND NON-PARTY MORRON.**

Federal courts possess multiple overlapping authorities to prevent non-party harassment that threatens judicial integrity and prejudices legitimate litigation rights.   Not only does Federal Rule of Civil Procedure 26(c) provide specific statutory authority for protective orders "to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense," the Supreme Court's decision in *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44-45 (1991), establishes federal courts' inherent power to "manage their own proceedings and control the conduct of those

who appear before them." This authority extends to sanctioning conduct that "abuses the judicial process" through "harassment, delay, and oppression." *Id*. at 46.

Courts within this circuit have readily applied these principles to address harassment of a party or party's counsel during litigation. In *Kassem v. Martin*, 2017 U.S. Dist. LEXIS 208865, at *3 (M.D. Fla. 2017), the court emphasized that its "inherent power extends to a full range of litigation abuses." *See also Flannery v. USAA Gen. Indem. Co.*, 2025 U.S. Dist. LEXIS 57969, at *3 (S.D. Fla. 2025) (this Court exercised its inherent authority to "control and regulate the proceedings" to address a situation where a pro se litigant engaged in threatening and offensive communications with opposing counsel).

Courts have upheld protective orders in civil cases when communications are coercive, abusive, or misleading, particularly when they undermine a party's ability to participate in litigation or maintain confidence in their counsel. *Ojeda-Sanchez v. Bland Farms*, 600 F. Supp. 2d 1373, 1376 (S.D. Ga. 2009). Examples include threats, false statements, or actions that discourage participation in the lawsuit. *Id; see also Madura v. BAC Home Loans Servicing L.P.*, No. 8:11-cv-2511-T-33TBM, 2012 U.S. Dist. LEXIS 72625, at *3 (M.D. Fla. May 24, 2012).

Here, Morron's and Kalish's unrelenting harassment campaign creates substantial annoyance, oppression, and undue burden by forcing Huntington to divert resources from legitimate litigation toward reviewing their incessant and extensive emails to Huntington and the undersigned, which contain increasingly extortionary threats and frivolous AI-generated pleadings citing to non-existent legal authority. Morron's and Kalish's conduct drives up litigation costs through meritless demands and baseless accusations, while simultaneously chilling legitimate litigation rights through intimidation tactics and threats of prosecution. Moreover, Morron's and

Kalish's recent communications have surpassed mere threats towards Huntington and its counsel and instead, have risen to the level of extortion.  *See* **Exhibit C**.

The Court's instructions, which were first communicated to Morron on May 29, 2025, and reiterated during the June 6 Hearing, were unambiguous: Morron, as a non-attorney and non-party, cannot represent Kalish, and communications between the parties must proceed directly between undersigned counsel and Kalish (unless Kalish hires a licensed attorney).  At the conclusion of the June 6 Hearing, Judge Hunt expressly reserved Huntington's right to seek relief from Morron's and Kalish's conduct, providing "[a]nd if any of those issues come back up, you can file things and ask for the appropriate relief …." *See* **Exhibit A** at pg. 30 ln. 7 – 14.  Morron's and Kalish's subsequent escalation of harassment activities after the Court's clear directive demonstrates willful contempt for judicial authority and requires immediate corrective action to preserve the integrity of these proceedings and the Court's ability to manage its docket effectively.

As confirmed within the Report and Recommendation, Morron possesses no legitimate interest that would justify continued harassment; Morron is neither a party to this litigation nor a licensed attorney authorized to represent Kalish.  This Court has explicitly prohibited her from engaging in any unauthorized practice of law or taking any action on behalf of Kalish. *See* **Exhibit A** at pg. 20 ln. – pg. 21 ln. 9.  Morron's and Kalish's ongoing, systematic harassment campaign violates this Court's explicit Orders, threatens judicial integrity, and prejudices Huntington's legitimate litigation rights.  Federal courts possess both the inherent power and the constitutional responsibility to prevent such interference with judicial proceedings, and Morron's increasingly disruptive and threatening conduct warrants immediate protective relief.

**II.     DEFENDANT KALISH'S AND NON-PARTY MORRON'S CONTINUED HARASSMENT CAMPAIGN AGAINST HUNTINGTON AND ITS COUNSEL CONSTITUTES WILLFUL CONTEMPT OF COURT.**

This Court possesses the inherent power to enforce its orders through contempt proceedings, having the authority to punish "disobedience or resistance to its lawful writ, process, order, rule, decree, or command" through contempt proceedings. *See United States v. Cable News Network*, 865 F. Supp. 1549, 1552 (S.D. Fla. 1994) (quoting 18 U.S.C. § 401)); s*ee also Young v. United States ex rel. Vuitton et Fils S.A.*, 481 U.S. 787, 798 (1987).

Civil contempt is "a mechanism designed to coerce compliance with court orders." *Carpenters Loc. 140 Pension Fund v. Phillips*, No. 8:05-CV-2202-T-17EAJ, 2006 U.S. Dist. LEXIS 87994, at *5 (M.D. Fla. Dec. 5, 2006) (quoting *In re Lawrence*, 279 F. 3d 1294, 1300 (11th Cir. 2002)).  Entry of civil contempt is appropriate when "(1) the allegedly violated order was valid and lawful; (2) the order was clear, definite and unambiguous; and (3) the alleged violator had the ability to comply with the order." *Id*.; *see also McGregor v. Chierico*, 206 F. 3d 1378, 1383 (11th Cir. 2000).  Civil contempt "may be imposed in an ordinary civil proceeding upon notice and an opportunity to be heard*." Serra Chevrolet, Inc. v. GMC*, 446 F. 3d 1137, 1147 (11th Cir. 2006) (internal citation and quotation marks omitted).  "The absence of willfulness is not a defense to a charge of civil contempt." *FTC v. Leshin*, 618 F. 3d at 1232 (11th Cir. 2010) (citing *McComb v. Jacksonville Paper Co*., 336 U.S. 187, 191 (1949)).

Under Eleventh Circuit precedent, non-parties who act in concert with parties to violate court orders may be held in contempt if they have actual notice of the order.  *See FTC v. Leshin*, 618 F.3d 1221, 1232 (11th Cir. 2010); *see also Blanco GmbH + CO. KG v. Vlanco Indus. LLC*, 992 F. Supp. 2d 1225, 1242 (S.D. Fla. 2013).

The Court's directives following the June 6 hearing issued clear, specific, and unambiguous directives prohibiting Morron from communicating with Huntington or its counsel directly, indirectly, or on Kalish's behalf regarding this litigation and prohibiting either Morron

and/or Kalish's use of AI-generated content with fabricated citations. As the Court specifically noted, federal courts have "inherent authority to sanction the misuse of AI when it affects the Court's docket, case disposition, and ruling," with consequences that can include "the dismissal of a case." *See* ECF No. 52 at 5-6. The Court's Report and Recommendation (ECF No. 52) establishes the legal framework that makes this contempt motion not just appropriate, but necessary.

The escalating pattern of violations since ECF No. 52 - more fabricated citations in AI-generated pleadings filed after the Court's warnings than before them - demonstrates far more than inadvertent non-compliance. This represents a coordinated and deliberate scheme to defy the Court's authority while attempting to maintain plausible deniability through technical manipulation of the filing process.

The Court's recommendation that Kalish's future motions should be "written by either legal counsel or Dr. Kalish himself" was a clear directive designed to eliminate the ghost-writing problem. *See* ECF No 52 at 6-7. The fact that the identical problematic patterns have continued and escalated since this warning demonstrates willful contempt of the Court's authority.

The systematic pattern of fabricated citations in post-June 6 pleadings provides concrete evidence supporting the Court's concerns about authorship. The fabricated cases cited by Kalish and/or Morron and listed in Paragraph 9 herein demonstrate the systematic use of AI-generated content that could not have been produced through legitimate legal research.

Morron's subsequent admission that "My ChatGPT just helps me put my word salad together" confirms that she is using artificial intelligence to generate the fabricated citations appearing in pleadings filed under Kalish's name, providing direct evidence of both the AI use and ghost-writing that the Court prohibited.

Since the June 6 Hearing, Huntington and its counsel have received countless emails purportedly from "Stanley Kalish" but exhibiting the identical characteristics, arguments, and AI-generated content previously sent directly by Morron.  *See* e.g. **Exhibit B Composite**.  Kalish and Morron's conduct represents far more than inadvertent non-compliance; the timing, coordination, and methodical nature of these violations establish a deliberate scheme to defy the Court's authority while attempting to maintain plausible deniability by using Kalish's email account rather than Morron's to send the emails.   It appears clear the emails received either from Morron or Kalish are drafted and/or sent by the same person – non-party Morron.

Morron and Kalish's ongoing barrage of AI-generated communications to the undersigned following the June 6 Hearing constitute a willful violation of this Court's Orders and a deliberate disregard for this Court's authority, evidenced by a systematic and unrelenting campaign of harassment directed at Huntington and its counsel.  More recently, Morron and Kalish have resorted to acts of extortion in violation of 18 U.S.C. § 875(d) against Huntington and the undersigned, attempting to coerce either a release of the Vessel and a $50 million damages award or compliance with their frivolous, overly burdensome, and AI-generated pleadings discovery demands with threats of federal criminal charges and reputational harm.  *See* **Exhibit C**.

Morron and Kalish's systematic escalation of harassment against Huntington and its counsel following explicit judicial prohibition, combined with the sophisticated attempts to circumvent rather than comply with the Court's Orders, demonstrates willful and deliberate contempt that strikes at the heart of judicial authority and threatens the integrity of these proceedings.  Morron and Kalish's recent efforts to intentionally circumvent and defy the Orders surpass civil contempt and rise to the level of contempt, warranting this Court's imposition of the appropriate sanctions.

Case No.: 0:25-cv-61018-WPD

WHEREFORE, Plaintiff respectfully requests that this Court:

1.  Schedule an in-person hearing on this Motion on an expedited basis;

2.  Enter a Protective Order expressly prohibiting non-party Morron from communicating with Huntington or its counsel directly or indirectly either for herself and/or on behalf of Kalish regarding this case;

3.  Find Defendant Stanley R. Kalish in contempt of Court for violating this Court's Orders (ECF Nos. 52 and DE 57);

4.  Find non-party Danielle Morron in contempt of Court for violating this Court's Orders (ECF Nos. 52 and DE 57);

5.  Impose appropriate civil sanctions to coerce compliance with the Court's Orders, including a reasonable daily fine for each day that Stanley R. Kalish and/or non-party Danielle Morron continue to violate the Court's Orders;

6.  Award Huntington reasonable attorneys' fees and costs incurred in bringing this motion and in addressing the violations of the Court's Orders;

7.  Order Stanley R. Kalish and non-party Danielle Morron to purge themselves of future contempt by immediately ceasing all prohibited conduct;

8.  Waive any future local rule, including Local Rule 7.1(a)(3)(A), for good faith conferral on any motion; and

9.  Grant such other and further relief as this Court deems just and proper.

Dated: July 28, 2025                        Respectfully submitted,

                                            /s/ Nicholas J. Zeher
                                            Nicholas J. Zeher, Esq. (Fla. Bar No. 1003565)
                                            Serena A. Witter, Esq. (Fla. Bar No. 45216)
                                            ROBERT ALLEN LAW
                                            The Four Seasons Office Tower
                                            1441 Brickell Avenue, Suite 1400
                                            Miami, Florida  33131
                                            Tel.:   (305) 372-3300
                                            Fax:   (305) 379-7018
                                            Email: nzeher@robertallenlaw.com
                                                      switter@robertallenlaw.com
                                                      litigation@robertallenlaw.com

                                            Counsel for Plaintiff

-16-

Case No.: 0:25-cv-61018-WPD

## REQUEST FOR EXPEDITED HEARING

Given the time-sensitive nature of this Motion and pursuant to Local Rule 7.1(b)(2) of the Southern District of Florida, Huntington respectfully requests the Court schedule an in-person hearing on this Motion against Defendant Stanley R. Kalish and Non-Party Danielle Morron on an expedited basis.  Huntington believes that oral argument for approximately fifteen minutes would aid the Court in addressing the legal and factual issues raised herein due to the nature of issues presented.

Dated: July 28, 2025

Respectfully submitted,

*/s/ Nicholas J. Zeher*
Nicholas J. Zeher, Esq. (Fla. Bar No. 1003565)
Serena A. Witter, Esq. (Fla. Bar No. 45216)
ROBERT ALLEN LAW
The Four Seasons Office Tower
1441 Brickell Avenue, Suite 1400
Miami, Florida  33131
Tel.:   (305) 372-3300
Fax:   (305) 379-7018
Email: nzeher@robertallenlaw.com
        switter@robertallenlaw.com
        litigation@robertallenlaw.com

*Counsel for Plaintiff*

## CERTIFICATE OF GOOD FAITH CONFERRAL

Pursuant to Local Rule 7.1(a)(3)(A), the undersigned did not attempt conferral with Stanley Kalish and Danielle Morron due to the veracity of the allegations within this Motion and with a good degree of certainty Morron and Kalish would not agree.

Dated: <u>July 28, 2025</u>

Respectfully submitted,

/s/ *Nicholas J. Zeher*
Nicholas J. Zeher, Esq. (Fla. Bar No. 1003565)
Serena A. Witter, Esq. (Fla. Bar No. 45216)
ROBERT ALLEN LAW
The Four Seasons Office Tower
1441 Brickell Avenue, Suite 1400
Miami, Florida  33131
Tel.:   (305) 372-3300
Fax:    (305) 379-7018
Email: nzeher@robertallenlaw.com
        switter@robertallenlaw.com
        litigation@robertallenlaw.com

*Counsel for Plaintiff*

## CERTIFICATE OF SERVICE

IT IS HEREBY CERTIFIED that a true and correct copy of the foregoing was served via

Fed-Ex to Defendant Stanley Kalish and to non-party Danielle Morron via transmission of Notice

of Electronic Filing generated by CM/ECF this 28th day of July 2025.

Respectfully submitted,

/s/ *Nicholas J. Zeher*
Nicholas J. Zeher, Esq. (Fla. Bar No. 1003565)
Serena A. Witter, Esq. (Fla. Bar No. 45216)
ROBERT ALLEN LAW
The Four Seasons Office Tower
1441 Brickell Avenue, Suite 1400
Miami, Florida 33131
Tel.:   (305) 372-3300
Fax:    (305) 379-7018
Email: nzeher@robertallenlaw.com
        switter@robertallenlaw.com
        litigation@robertallenlaw.com

*Counsel for Plaintiff*