# COMPOSITE EXHIBIT B

Friday, June 20, 2025 at 12:14:47 PM Eastern Daylight Time

| | |
|---|---|
| **Subject:** | Required Conferral re: Motion for Evidentiary Hearing, Related Sanctions, and Pending Appellate Filings |
| **Date:** | Friday, June 20, 2025 at 12:03:20 PM Eastern Daylight Time |
| **From:** | Stanley Kalish |
| **To:** | Nick Zeher, Serena A. Witter, Jessie Pulitzer, Christina Caristo, Litigation Paralegals |
| **CC:** | Dmo Pa |
| **Attachments:** | AttachedImage.png, AttachedImage.png, AttachedImage.png, AttachedImage.png |

[EXTERNAL SENDER]

Mr. Zeher,

Pursuant to local rules for the parties to meet and confer regarding the motions, I write to request your position on my forthcoming **Motion for Evidentiary Hearing** in *Kalish v. Huntington Bank*, which will be filed to resolve numerous contested factual issues surrounding your client's unlawful seizure and ongoing threatened interlocutory liquidation of the federally documented vessel **M/Y Something About Meri (Official No. 1278223),** contemporaneous with your Fedex demand for $400,000 cash to "release the vessel from arrest" and a blanket waiver of liability requiring signatures of both me and Danielle Morron. These issues include, but are not limited to:

1. **Failure to Account for Original Loan Proceeds**
   Huntington Bank has provided no admissible evidence tracing or reconciling the $1,318,000 in proceeds allegedly disbursed under the May 6, 2017 First Preferred Ship Mortgage (FPSM), the execution of which materially diverts from contemporaneous 2017 closing statements and disbursement records authored by attorney Walter Morgan.

2. **Absence of Loan Servicing Records**
   Your client has failed to produce any amortization schedules, monthly statements, or payment histories from 2017 to 2025—despite seeking the extraordinary remedy of an interlocutory sale under admiralty jurisdiction.

3. **Extrajudicial and Unlawful Vessel Seizure**
   On April 8, 2025, your client effectuated a private seizure of the vessel using fabricated paperwork, with the complicity of local officers lacking maritime or federal authority, and forcibly removed the liveaboard custodian under threat of arrest—all in direct violation of 46 U.S.C. § 31325(b) and without a warrant or court order.

4. **Material Misstatements to the NVDC**
   Your client's name-change and renewal submissions to the U.S. Coast Guard were rejected for lack of FPSM lienholder certification—yet no correction has been offered to this Court regarding that failure or the false statements made under penalty of perjury.

5. **False Sworn Allegations in the Verified Complaint**
   Contrary to your client's sworn assertions that the vessel was "grounded," "without power," and "uninhabitable" (Verified Complaint ¶¶ 5–8), we will present unambiguous photographic, video, and testimonial evidence showing that the vessel was afloat, powered, and occupied by a custodian maintaining regular contact with Huntington Bank and its agents.

Please confirm by **5:00 p.m. today** whether your client will oppose the motion for evidentiary hearing. If no

response is received, I will certify that conferral was attempted in good faith pursuant to Local Rule 7.1.

Additionally, I intend to seek leave to file the following:

- **Motion to Disqualify Robert Allen Law**
  Based on direct conflicts of interest arising from your firm's receipt of confidential legal drafts on May 6, 2025, which were later weaponized against me in a misrepresentative and misleading complaint—without disclosure of your firm's preexisting representation of Huntington.

- **Motion to Strike or Dismiss Verified Complaint**
  Based on procedural defects, factual omissions, and material misstatements presented to this Court in bad faith, particularly those used to justify seizure under Rule C.

- **Motion for Rule 11 and Rule 60(b)(3) Sanctions**
  Your client's calculated abuse of admiralty procedures and misrepresentations regarding possession and mortgage enforceability warrant sanctions under both Rule 11 and Rule 60(b)(3).

- **Motion to Compel Discovery**
  I will seek discovery of all communications between Huntington, its predecessor institutions, Robert Allen Law, and third parties including National Liquidators, Rick Obey Yacht Sales, and Legend Yacht Transport. Of particular concern are financial arrangements and payment patterns that suggest Rick Obey Yacht Sales—or its agents—held an ongoing economic stake in the loan's enforcement, thereby invalidating any presumption of arm's-length collection.

- **Motion to Vacate Order Appointing National Liquidators as Substitute Custodian**

  I will also be filing a motion to vacate Judge Dimitrouleas's order appointing National Liquidators as substitute custodian for the pendency of this matter. It is now unequivocally clear that National Liquidators is unfit to serve in any neutral custodial capacity.

  From the outset, National Liquidators has acted not as an impartial custodian, but as a financially interested liquidation agent, operating in tandem with Rick Obey Yacht Sales. Their role in the inflated vessel valuation scheme in 2017, which induced a grossly disproportionate marine loan under false pretenses, establishes a long-standing pattern of self-dealing and bad faith. That misconduct culminated in their extrajudicial participation in the April 2025 vessel seizure, carried out without judicial oversight, in direct violation of the Ship Mortgage Act, and under color of law enforcement without a valid warrant.

  Since the seizure, National Liquidators has continued acting in direct coordination with Rick Obey Yacht Sales to lay the groundwork for a fast-tracked interlocutory sale, bypassing meaningful judicial review and evading scrutiny over the vessel's true market condition and title encumbrances.

  Most egregiously, Frank Kups of National Liquidators is now attempting to orchestrate, by and through your law firm—under the guise of "good faith conferral"—a vessel survey conducted through affiliated entities, with the foreseeable goal of artificially deflating the vessel's appraised value to facilitate a premeditated below-market sale. This effort is not rooted in preservation or custodianship; it is a pretextual liquidation strategy designed to benefit known parties at the expense of due process and neutral asset stewardship.

  The Court's appointment of National Liquidators was premised on assumptions of neutrality and preservation. Those assumptions have proven demonstrably false. The continued custodianship of the vessel by a party actively engineering its devaluation and liquidation constitutes irreparable prejudice to the undersigned and other interested parties. The appointment must be vacated immediately, and an independent, disinterested custodian must be installed to preserve the vessel pending full adjudication.

Finally, please be advised that I will be filing a **renewed appeal** of Judge Dimitrouleas's latest order, which improperly allowed your client to retain possession of the vessel despite:
(1) **Noncompliance with 46 U.S.C. § 31321**; and
(2) **An unlawful seizure executed prior to initiation of in rem proceedings.**

Kindly confirm whether Huntington intends to oppose interlocutory or full appellate review, or will stipulate to the existence of unresolved questions of material fact.

To ensure transparency and compliance with **Eleventh Circuit Rule 26.1**, please confirm whether your client contests the material interest or relevance of the following parties, all of whom will be disclosed in my forthcoming Certificate of Interested Persons (CIP):

- **Small Business Administration (SBA)** – $500,000 UCC lienholder based on loan funds previously expended directly on vessel restoration.

- **Saga Haven Marina** – Valid maritime lienholder.

- **Danielle Morron** – Liveaboard custodian and asserted salvage lien claimant.

- **U.S. Department of Justice** – Representing SBA's enforcement rights and monitoring due process violations by your client.

- **United States Coast Guard** – Regulatory body whose records were corrupted by your client's false NVDC filings.

Attached is a compiled document archive evidencing years of attempts by Danielle Morron and Captain Ari Ellenbogen to verify lienholder status and obtain proper documentation for vessel renewal from Huntington agent Gust Gianakis—efforts thwarted by your client's refusal to produce even a single properly executed FPSM rider or officer certification, beginning from before the time the current Certificate of Documentation expired on January 31, 2022.

Should your office continue to assert that it possesses lawful authority to enforce the FPSM, the evidentiary hearing will be your opportunity to finally prove it.

Regards,

**Stanley R. Kalish**



# dmo pa invited you to access a file

3 of 4



**Friday, June 20, 2025 at 12:54:22 PM Eastern Daylight Time**

| | |
|---|---|
| **Subject:** | HUNTINGTON BANK JUNETEENTH OSB LOAN DISCREPANCIES |
| **Date:** | Thursday, June 19, 2025 at 4:24:21 PM Eastern Daylight Time |
| **From:** | Stanley Kalish |
| **To:** | Nick Zeher, Serena A. Witter, Litigation Paralegals, Jessie Pulitzer, Christina Caristo |
| **Attachments:** | 5_20_20 EMAIL ZIP FILE OF DUE DILIGENCE DOCUMENTS FOR POTENTIAL PARTNERSHIP TRANSFER.zip, 1_24_25 2024 INTEREST PAYMENTS TOTALLING $64,923.48 AS PER LIZ HACKEY OF HUNTINGTON BANK.pdf, EIDL RECONCILIATION FOR SBA 12_31_21 omitting monthly yacht loan mortgage payments.xlsx |

[EXTERNAL SENDER]

Mr. Zeher,

In light of your recent acknowledgment that Huntington Bank does not, at present, possess a factual accounting—or even monthly invoices or statements—showing how much has been paid on the vessel loan note for **Official No. 1278223**, yet seeks to liquidate the collateral it **criminally seized** in a **threatened interlocutory sale** before adjudicating the competing collateral claims on the merits—or even validating the alleged outstanding balance in any meaningful or reconcilable way—I'm following up regarding your client's continued refusal to acknowledge one of the most basic laws of finance:

A loan amortized at **4.25% over 20 years**, with monthly payments of **$8,161.51**, does **not** remain frozen at **$1,191,548.67** for over a year—unless something deeply dysfunctional, or deliberately deceptive, is at play.

Here are the undisputed facts:

- A **Chemical Bank loan statement dated April 5, 2020** reflects a principal balance of **$1,191,548.67**;

- A **handwritten yellow-paper note** from **Walter Morgan**, dated May 1, 2020 and preserved in a zip file, confirms the same OSB while discussing partnership planning, prior equity contributions, shared expenses, and the FPSM loan itself—in anticipation of entering an equity-sharing agreement with a third party;

- Despite **numerous mortgage payments between May 2020 and May 2021**—including several by **Christiano Viotti** and a **$9,000 payment by Danielle Morron on May 14, 2021**—the outstanding principal quoted by **Gust Gianakis** in early 2022, **as of May 15, 2021** (for **IRS and SBA reporting purposes**, no less), remained inexplicably unchanged at **$1,191,548.67**. He refused to provide that balance in writing, although it was nonetheless memorialized in emails sent to the **Small Business Administration** for loan compliance purposes.

Now, to preempt any feigned confusion: I acknowledge that my own payments during this stretch weren't always punctual. But that does not explain how **tens of thousands of dollars** paid by third parties—including my agents, business partners, and caretakers—**failed to reduce the principal by even a single dollar**.

So the obvious question: **Where did the money go?**

Was the loan ever amortized as promised? Or was it merely structured to appear "accounted for" on paper

—while maximizing ill-gotten gains for **Rick Obey Yacht Sales** and your client?

Let's not ignore the glaring reality that **Huntington Bank has never produced a single monthly loan statement** during the four years it claimed to be servicing this loan. No documentation showing amortization, interest/principal allocation, late charges, or even **evidence of the $1,318,000 loan disbursement** allegedly extended on May 7, 2017 to fulfill a sale orchestrated by its own handpicked brokerage partner. To date, your client has failed to trace those disbursement proceeds in any meaningful way.

And let's not forget: **Rick Obey's brokers hand-selected Radius Bank**, inflated the vessel's valuation, staged a **grossly overleveraged closing**, and inserted a clause into the **Marine Note and Security Agreement** declaring **death a material event of default**. This wasn't a loan designed for repayment. It was a **financial booby trap**, timed to detonate via age, illness, or litigation attrition—enabling premature liquidation, total loss of perceived borrower equity, and **backdoor reacquisition by Rick Obey affiliates**. What your client now labels a "mortgage" functioned more like a **lease-to-default instrument**, with one inevitable outcome.

Your client now holds the vessel following a **highly questionable seizure**, claims to be owed over $1.1 million, and is actively threatening liquidation **before adjudication on the merits**—while dodging responsibility for how the loan was structured, handled, or serviced for nearly a decade. Huntington has yet to demonstrate any **lawful possessory interest** in the vessel—particularly in light of the **extrajudicial seizure, interstate transport, and removal of the vessel from its authorized custodian** on April 8, 2025.

To clarify the record and fulfill your client's legal obligations, please immediately produce the following:

- A complete payment history from **May 2017 through the date of seizure**, including payor identity;
- A breakdown of how each payment was applied (interest vs. principal);
- All fees, penalties, or charges deducted;
- **Monthly loan statements from June 2017 to present**;
- Any side agreements—written or oral—between Huntington Bank and **Rick Obey or his affiliates**, including any commissions, kickbacks, or incentives tied to default or forced liquidation.

Until then, I will continue to view your client's claims as nothing more than a **structurally abusive elder financial scheme**, dressed up in legalese and timed to weaponize default against an aging borrower—all to funnel the asset back to the brokerage that originated the trap.

And while Huntington attempts to recreate its nonexistent loan amortization history, consider this your **formal notice** that the **Small Business Administration and U.S. Department of Justice** have become actively interested in the vessel's disposition. The **SBA holds a $500,000 UCC lien** against the very same collateral your client unlawfully seized. While the Small Business Administration and its attorneys are currently **observing Juneteenth**, I've been advised they will be in touch shortly—**likely not to applaud** your client's loan servicing or criminal repossession tactics, but to assert the government's **vested interest in halting any interlocutory sale** of SBA-encumbered collateral.

Stanley Kalish

**From:** Stanley Kalish srkalish@bellsouth.net
**Subject:** Fw: 92 Mangusta - partnership offer 1: Signature Request from rupert
**Date:** June 10, 2025 at 1:39 PM
**To:** Nick Zeher nzeher@robertallenlaw.com, Serena A. Witter switter@robertallenlaw.com, Litigation Paralegals litparalegal@robertallenlaw.com

SK

[EXTERNAL SENDER]

----- Forwarded Message -----
**From:** rupert (at rickobeyyachtsales.com) via <mail@signnow.com>
**To:** "srkalish@bellsouth.net" <srkalish@bellsouth.net>
**Sent:** Monday, May 10, 2021 at 02:58:44 PM PDT
**Subject:** 92 Mangusta - partnership offer 1: Signature Request from rupert

# signNow

## You were invited to review and sign a document

rupert@rickobeyyachtsales.com invited you to sign "92 Mangusta - partnership offer 1"

[View Document]

**Did you receive this email by mistake or have any questions?**
You can contact the sender by clicking the button below.

[Contact Sender]

**This invite will expire in 30 days**

This email contains a secure link to signNow designed for the initial recipient. Please do not forward or share this email, link, or access code with others. If you believe this email was sent to you in error, please contact the sender.

 

Contact Support      Terms of Service      Privacy Policy

2021 © airSlate, Inc. All rights reserved.

17 Station Street, 3rd Floor, Brookline, MA 02445

**From:** **Stanley Kalish** srkalish@bellsouth.net
**Subject:** Fw: 92' Mangusta formerly named SCRATCH new name SOMETHING ABOUT MERI
**Date:** June 10, 2025 at 2:16 PM
**To:** Nick Zeher  nzeher@robertallenlaw.com, Serena A. Witter  switter@robertallenlaw.com, Litigation Paralegals  litparalegal@robertallenlaw.com



[EXTERNAL SENDER]

----- Forwarded Message -----
**From:** Rupert Gregory <rupert@rickobeyandassociates.com>
**To:** 'Tommy Fahlen' <tommy.fahlen@rolls-royce.com>
**Cc:** Stanley Kalish <srkalish@bellsouth.net>
**Sent:** Thursday, November 16, 2017 at 07:31:24 AM PST
**Subject:** 92' Mangusta formerly named SCRATCH new name SOMETHING ABOUT MERI

Dear Tommy,

I'm checking to see if you have had time to put an email together to provide

to the Insurance company to haul out the 92' Mangusta Something About Meri

to determine the damage.

Thank you!

Best Regards,

Rupert Gregory

### *Rick Obey & Associates*

*2525 Marina Bay Dr*

*Suite 202*

*Fort Lauderdale, FL.*

*Office: 954.530.4557*

**Cell: 954.907.5622**

**From:** **Stanley Kalish** srkalish@bellsouth.net
**Subject:** Fw: 92' Mangusta Something About Meri, Formerly , Scratch
**Date:** June 10, 2025 at 2:17 PM
**To:** Nick Zeher nzeher@robertallenlaw.com, Serena A. Witter switter@robertallenlaw.com, Litigation Paralegals litparalegal@robertallenlaw.com

[EXTERNAL SENDER]

----- Forwarded Message -----
**From:** Rupert Gregory <rupert@rickobeyandassociates.com>
**To:** Stanley Kalish <srkalish@bellsouth.net>
**Sent:** Tuesday, December 5, 2017 at 06:59:44 AM PST
**Subject:** FW: 92' Mangusta Something About Meri, Formerly , Scratch

**From:** Tommy Fahlen [mailto:tommy.fahlen@rolls-royce.com]
**Sent:** Monday, December 04, 2017 1:34 PM
**To:** Rupert Gregory
**Cc:** Stanley Kalish
**Subject:** RE: 92' Mangusta Something About Meri, Formerly , Scratch

Dear Gregory.

I apologize for the delay in attending to your request.

Regarding the issue with the "wooden blocks" being stuck in between the impeller and impeller housing (remains from the transport from Europe)  you are correct in your assumption that the only way to determine if any damages has occurred to the impeller when engaging the clutch is to dry-dock the vessel to allow for visual inspection.

Yes, divers could be used but they would not be able to fully inspect the impeller or the guide vane chamber.

Any possible concerns or issues related to gearbox etc. would need to be addressed with the appropriate supplier.

Please do not hesitate to contact me if you should have any questions or concerns.

Again I do apologize for the delay.

Thank you.

Best Regards

Tommy Fahlen
Snr. Service Coordinator



Please see below new address;

Rolls Royce Marine North America, Inc.
3118 Commerce Parkway
Miramar, FL 33025 USA

Cell ph:              +1 954 205 4821

E-mail:  tommy.fahlen@rolls-royce.com


**For After Hours Service and Technical Support questions, please contact our 24/7 Technical Support department:**

**From:** **Stanley Kalish** srkalish@bellsouth.net
**Subject:** Fw: Agence de Voyage Opodo - Comparateur de vols et séjours
**Date:** June 10, 2025 at 2:47 PM
**To:** Nick Zeher nzeher@robertallenlaw.com, Serena A. Witter switter@robertallenlaw.com, Litigation Paralegals litparalegal@robertallenlaw.com

[EXTERNAL SENDER]

----- Forwarded Message -----
**From:** Rupert Gregory <rupert@rickobeyandassociates.com>
**To:** Stanley Kalish <srkalish@bellsouth.net>
**Sent:** Monday, May 22, 2017 at 06:04:22 AM PDT
**Subject:** FW: Agence de Voyage Opodo - Comparateur de vols et séjours

**From:** Thierry Longuy [mailto:ThierryLonguy@hotmail.fr]
**Sent:** Monday, May 22, 2017 3:02 AM
**To:** rupert@rickobeyandassociates.com; srkalish@bellsouth.net
**Subject:** Agence de Voyage Opodo - Comparateur de vols et séjours

# Opodo - Voyagez plus loin

Découvrez vite les offres et promos pour votre prochain voyage sur Opodo

https://www.opodo.fr/travel/secure/#/details/

Provenance : Courrier pour Windows 10

**From:** Stanley Kalish srkalish@bellsouth.net
**Subject:** Fw: American Airlines - vols
**Date:** June 10, 2025 at 2:53 PM
**To:** Nick Zeher nzeher@robertallenlaw.com, Serena A. Witter switter@robertallenlaw.com, Litigation Paralegals litparalegal@robertallenlaw.com



[EXTERNAL SENDER]

----- Forwarded Message -----
**From:** Rupert Gregory <rupert@rickobeyandassociates.com>
**To:** Stanley Kalish <srkalish@bellsouth.net>
**Sent:** Sunday, May 21, 2017 at 06:33:56 PM PDT
**Subject:** FW: American Airlines - vols

**From:** Rupert Gregory [mailto:rupert@rickobeyandassociates.com]
**Sent:** Friday, May 19, 2017 5:33 PM
**To:** Stanley Kalish
**Subject:** FW: American Airlines - vols

Dear Dr. Kalish,

It looks as though the Captain has arranged a flight. This is what he sent. I can't open it. I would suggest for you to reach out to him.

I've already told him he needs to come around the 25th.

I'm going to Cc you and the Insurance Company with the Captains license and passport.

Best regards,

Rupert

**From:** Thierry Longuy [mailto:ThierryLonguy@hotmail.fr]
**Sent:** Friday, May 19, 2017 12:17 PM
**To:** rupert@rickobeyandassociates.com

**Subject:** American Airlines - vols

# American Airlines - vols

https://bookaa.amadeus.com/plnext/AADX/Override.action?__utma=1.1058101217.1495210024.1495210024.1495210024.1&__utmb=1.1.10.1495210024&__utmc=1&__utmx=-&__utmz=1.1495210024.1.1.utmcsr=bing|utmccn=(organic)|utmcmd=organic|utmctr=(not%20provided)&__utmv=-&__utmk=69030033#/FPOW

Provenance : Courrier pour Windows 10