# EXHIBIT F

Thursday, June 19, 2025 at 3:07:51 PM Eastern Daylight Time

| | |
|---|---|
| **Subject:** | RE: Notice of Known Unadjudicated Maritime Liens – M/Y Something About Meri (ON 1278223) RE: Motions & Valuation Scheme – Objection |
| **Date:** | Wednesday, June 18, 2025 at 5:15:40 PM Eastern Daylight Time |
| **From:** | dmo pa |
| **To:** | Nick Zeher, rosh@algeresq.com, jack@sagahaven.com |
| **CC:** | Litigation Paralegals, Serena A. Witter, Christina Caristo, Jessie Pulitzer, Stanley Kalish |
| **Attachments:** | image001.png |

[EXTERNAL SENDER]

Dear Nicholas,

LDespite your highly questionable attempts to "confer in good faith" regarding all known parties with active in rem interests against the M/Y *Something About Meri* (USCG Official No. 1278223), you continue to ignore the obvious: this vessel title is burdened with multiple, widely known, unextinguished maritime liens- including the previously lawfully recognized recordation on the USCG Abstract and still unresolved lien held by Saga Haven Marina in Estate Frydenhoj, U.S. Virgin Islands. I have copied them and their counsel, Rosh D. Alger, Esq., should they wish to continue to pursue their claim, since you declined to involve Rosh in your conferral communication, despite his information being available in the court records, knowing full well that his client's claim has not been adjudicated or withdrawn, and was in fact in active litigation in the Federal District Court of the Virgin Islands at the time your client extrajudicially seized and relocated a vessel it has no lawfully established legal right to touch, regardless of your client's unadjudicated claim of missed mortgage payments, which it has, to date, concurrently failed to produce so much as a single loan proceeds disbursement and repayment ledger, amortization schedule, or reconciliation to Dr. Kalish for.

Jack Rosen, Saga Haven's principal, is about Dr. Kalish's age. I can assure you he's more stubborn than the wood on his 40-year old dock, and is not likely going to voluntarily withdraw his lien without getting paid on a case he's already paid boatloads of money to pursue in Federal maritime litigation, but you are certainly free to ask or try to coerce Jack's signature on a voluntary Fedex waiver of title lien claims for no consideration.

Huntington timely knew about Jack's in rem claim. You even referenced it in your own filings. Huntington knew Jack tried to arrest the vessel, in rem, in February 2025. His arrest attempt was denied on procedural grounds, unlike your client, who simply skipped the legal process entirely and seized the vessel without a warrant or any shred of judicial oversight by dispatching a bunch of goons with driver's licenses and fake paperwork, much like Rupert.

Jack did manage to reach Gust Gianakis directly last year via phone regarding the asserted lien, because I had previously inadvertently disclosed what I though was the correct FPSM holder bank's name and contact information to a captain introduced to me by Saga Haven. The record will reflect that Huntington Bank was well aware of this Federal District Court lawsuit when it executed its extrajudicial

seizure and interjurisdictional transport of the vessel without an adjudicated lien claim or warrant from the USVI to Florida in April 2025. Your client now seeks to bypass all of this- multiple unresolved maritime claims, factual inaccuracies in its mortgage chain, and its own failure to record an assignment— by quietly threatening to seek an interlocutory sale and manufacturing false urgency while continuing to stick its hand out demanding unentitled payment by misrepresenting its authority to "release" the vessel from arrest, and nothing more.

As you know, I previously submitted a salvage lien through M/Y Scratch LLC to both Huntington and Saga Haven's counsel Rosh Alger. That claim remains unpaid and unpublished on the Abstract, despite being acknowledged formally herein, and in your own legal filings, because the lienholder information I submitted to the NVDC was based on Huntington's repeated misrepresentations over four years that it was the proper mortgagee- repeated material misrepresentations which I now know were false. The salvage lien claim was mailed to Huntington Bank, who I have faithfully been making mortgage payments to, rather than the lawfully recognized FPSM holder, Radius Bank, which does not even share a headquarters of record in the same state as Huntington Bank, in reliance on direct representations regarding Huntington Bank's legal status to me as subsequent mortgagee, loan holder information I relied on as communicated to me by Rupert Gregory, in order for Huntington to begin to solicit mortgage payments from me for four years- factual and legal representations I have since confirmed were fraudulent.

The entity M/Y Scratch LLC was created in good faith in anticipation of holding legal title which was supposed to be obtained from an April 15, 2022 closing attended in person by me, Stan Kalish, Walter Morgan, and Rupert Gregory, which sought to assign 99% ownership and assignment of FPSM mortgagee rights to M-Y Scratch LLC. Rupert personally provided current Mortgage Holder information (the Huntington Bank) to the closing attorney for the pending closing documents, and directly provided the information of Huntington as the then-FPSM assignee to the closing attorney, with a corresponding notarized bill of sale, which the Huntington Bank authorized, but the NVDC later rejected and failed to record for lack of authenticity of the referenced lien holder Huntington Bank on the notarized Bill of Sale. I still haven't received any refund of my escrow deposits made into the Rick Obey Client Trust Account or Gregory's Yacht Sales and Management as a result of the failed closing, and Rupert continued thereafter the "closing" to disregard my asserted ownership and commercially represent the vessel to the open market as for sale for the next year, and still attempts to recycle the vessel and privately solicit new owners to this day, disregarding my "ownership" he collected escrow payments for the sake of.

Rupert's conduct of working behind the scenes directly with each of lenders passing around the Mangusta mortgage note, acting directly and representing himself to me and my CPA in an alleged fiduciary role as a Florida-licensed yacht broker of Rick Obey Yacht Sales, and withholding the complete set of original closing documents on the Mangusta in attempted commercial solicitations for sale, is the same Rick Obey-affiliated broker whose conduct is now the subject of multiple fraud allegations relating to the acquisition and ongoing conspiracy to deprive Stanley of his Federally recognized ownership rights, and Stanley and me, of money, and value of the collateral property we have collectively paid $4 million dollars toward.

As of this morning, I've formally requested that my lien be amended and resubmitted under my name personally, Danielle Morron, and directed to the most recent published FPSM bank of record, and Saga Haven Marina, a lawfully recognized unadjudicated Abstract lien holder. Let me save you some embarrassment in court: Huntington Bank is not the FPSM lienholder of record, as reflected in the USCG

Abstract.

A merger did not absolve the bank of the requirement to record a separate assignment of mortgage with the NVDC prior to attempting to enforce asserted lien rights. The NVDC has no record of an assignment from Chemical Bank or TCF Bank to Huntington. When I filed the lien, I was operating under false information- fed to me by the broker Rupert Gregory, and subsequently, in tandem with the Huntington bank's mortgage servicing agent for four years. I'm sure the documentation center has me flagged as the idiot who filed a salvage lien referencing a FPS mortgagee that legally doesn't exist. Eek.

If you want to add M/Y Scratch LLC as a party to the case to adjudicate an unpublished salvage lien, you are knowingly and willfully wasting the bank's capital on counsel. Legal work which bears material integrity and merit is apparently hard for you all to come by these days. You don't need leave to amend. MYS is a defunct shell entity with no assets, no revenue, and no legal title to anything, much like Rick Obey's broke shell companies it uses to facilitate high value yacht transactions that knowingly rip off the end consumers of such transactions and mortgagees by muddling several elements of trade, equity, and sale into an algebraic formula designed to conceal the receipt of proceeds intended to be applied strictly toward the application of the contracted sale price of a vessel, cash down payment proceeds which Rick Obey receives and then misappropriates to float payment on the brokerage's other spec vessels. The MYS entity was formed in anticipation of holding title following a sham closing in April 2022, where the vessel was supposed to be transferred based on mortgage holder information provided to the attorney by Rupert for use in closing documents, mortgagor information which was directly supplied under the guise of Rick Obey's brokerage license. That deal was never completed. The MYS LLC never earned any money, and still holds no legally recognized beneficial interest in the vessel.

As of this morning, I've formally requested to amend the lien to myself individually, Danielle Morron, based on the reality that all funds spent salvaging and repairing the vessel came from my personal bank accounts, not that of M/Y Scratch LLC's. The corrected lien will name Chemical Bank as FPSM holder, not Huntington. A notarized version will be submitted to the appropriate parties.

Now let's talk about your client's real motivation for threatening an interlocutory sale if their demand for $400,000 wire is not satisfied: to sidestep the legitimate claims of myself and Saga Haven, skip over the unresolved defects in your client's mortgage chain, and to liquidate the vessel to a Rick Obey affiliate in a long-premeditated bad faith sale intended to deflate the vessel's resale value using biased appraisals in an attempt to recycle it to gain additional commissions, and widen a deficiency judgment falling on Stan before anyone can stop you. But we see it. This isn't about principles of equity. This is about attempting to launder title to a vessel the bank has no possessory rights to, before the courts can intervene on the merits of your case, which there are none.

Lets call your narrative that the bank is "burdened" by rising costs from vessel custody and storage to push an interlocutory sale without even having assignable title rights to the vessel what it really is- fiduciary abuse and fraud on an elderly borrower. The costs the bank is now accumulating are entirely self-inflicted. Huntington is the party whose agents admitted to working with Rick Obey brokers to solicit an alternative private buyer to coerce further payments from me, then orchestrated an illegal seizure of the federally documented vessel, bypassed judicial process, and transported it across state lines. Now, facing multiple legitimate liens, it seeks to spin up urgency and pretend the only solution is a quick sale. Please.

If you or your paralegal bots try to move for interlocutory sale Mr. Zeher (who numbers their email

paragraphs and repeats the same exact sentence, highlighted and underlined, at the beginning and end of an email, whose own attorneys are not abusing CTRL C/CTRL V?), and or try to extinguish either my lien or Saga Haven's on your meritless, fraudulent case without proper notice, adjudication, or meaningful participation of ALL interested parties, this additional procedural misconduct will be raised with the Court, and preserved for appellate review. The bar complaints against you and your co-conspiring attorneys for such rampant, willful, and malicious unethical conduct will therein be accelerated as well.

    Just an FYI, Stan has indicated to me that he intends to submit for appellate review of the court's preliminary findings regarding any and all in rem actions, and the bank and its counsel's unlawful conduct and filings concerning the seizure, so you my want to proactively confer with him ASAP regarding those pending actions.

Sincerely,

Danielle Morron
Individual Lien Claimant (formerly M/Y Scratch LLC)
(786) 631-2495
dmopallc@outlook.com

---

**From:** Stanley Kalish <srkalish@bellsouth.net>
**Sent:** Tuesday, June 17, 2025 7:19 PM
**To:** Nick Zeher <nzeher@robertallenlaw.com>
**Cc:** Litigation Paralegals <litparalegal@robertallenlaw.com>; Serena A. Witter <switter@robertallenlaw.com>; Christina Caristo <ccaristo@robertallenlaw.com>; Jessie Pulitzer <jpulitzer@robertallenlaw.com>; Dmo Pa <dmopallc@outlook.com>
**Subject:** Re: Motions & Valuation Scheme – Objection

Mr. Zeher,

Thank you kindly for your email and the boldly audacious FedEx delivery today of a personal solicitation for $400,000 cash to Huntington and all-encompassing waiver of liability for you, your firm, your client, and all of its agents for prior misconduct, based on a binding agreement not yet drafted by your firm, followed by an immediate threat of interlocutory sale in the wake of your failed selective communication attempt with Danielle today, which has unsurprisingly already collapsed in apparent bad faith. I am glad we did not retain you, because you all are *almost* as terrible as the Rick Obey-branded yacht brokers themselves, but at least the active status of your state bar licenses are factually on the line. The yacht brokerage industry has zero licensure accountability for such malfeasance, but I'll be sure to give Rick Obey and National Liquidators zero stars on Yelp.

Your correspondence stated that if the settlement is accepted, "the vessel will be released from arrest." If not, you will request the vessel be auctioned off in an interlocutory sale. No shock there. Its not like your client didn't have a Rick Obey-branded buyer at a rock-bottom price firmly in place prior to yanking the vessel from its pristine anchorage in the Caribbean. Lets not pretend Rick Obey, Yacht Liquidators, and Huntington have not been openly colluding in the coordination of a forced sale for months prior to seizing the vessel, in a highly choreographed and planned ambush, despite prior good faith efforts to settle the account, and also despite Huntington's non-existent lien enforcement rights. Your client's extrajudicial behavior leading up to your threats today is precisely why Federally documented vessel custody disputes are exclusively governed by the Federal judiciary, and despite the court's preliminary

finding, jurisdiction, venue, and standing have not been properly invoked.

How many more poorly sought out and judicially unsupported angles is your client going to attempt to snake me and my vessel, and all my remaining assets before forcing me to rub your noses in the facts and demand full accountability in front of the judiciary? Jesus. Three months ago, your client didn't have any carrying or custodial costs, or any bond tied up with the court. Cry me a river that leads to the Carribean ocean if they feel the burden of carrying costs that they brought upon themselves is undue and excessive.

Before I break down the meritless basis upon which you assert your client's [unlawful] right to proceed in such wrongfully entitled manner, and your client's current posture, threatening to liquidate my vessel if I don't donate another $400,000 cash to this wholly fraudulent cause, with the bank still unable to *even* transfer title upon unadjudicated settlement, while refusing to account for its own actions, with an intended liquidation beneficiary who I am SURE is an associated buyer of the initial importer of record, some broke shell company of Rick Obey Yacht Sales, and who I am ALSO sure whose brokers have already been sniffing around the boat in Fort Lauderdale like hungry racoons at night in a trash bin, let me just say that your audacity and failure to account supports the need for a full evidentiary hearing, to determine who knew what, and when, under oath. Is that how you wish to proceed? Consider this statement my official conferral on such motion for an evidentiary hearing.

I am hereby requesting informal clarification as to the specific "claims" Huntington Bank, whose FPSM holder lien rights remain unverified, intends to constructively "release." While we're on the subject of audacity—perhaps you can clarify what legal basis Huntington Bank believes it has to issue a Form 1099-C for alleged loan disbursements it cannot verify, cannot reconcile with its own closing statement, and cannot prove were ever transferred in full.

If your client intends to fabricate debt relief in the eyes of the IRS based on phantom funds or missing proceeds, then I suggest we add this issue to the growing list of fraud-related topics to be addressed at an evidentiary hearing.

 To date: There is no recorded assignment of the First Preferred Ship Mortgage (FPSM) to Huntington Bank on file with the National Vessel Documentation Center; Your client took possession of the vessel prior to any arrest warrant being issued, and transported it across state lines before filing suit; The legal chain of custody of the mortgage instruments has not been adjudicated, and your client's filing appears to rely on multiple inconsistent versions of the loan documents.

 I do not consent to any of your proposed motions, particularly your request to survey the vessel "to assess the value." Huntington Bank had every opportunity to do that before it unlawfully seized the vessel without judicial process, using its go-to affiliate, Frank Kups, of National Liquidators.

 National Liquidators, who is now in possession of the vessel, helped substantiate an inflated pre-purchase survey on behalf of Rick Obey Yacht Sales in 2017, and was later brought back in September 2024 by Huntington Bank to produce a conveniently deflated "low-value" appraisal. That appraisal, as you're aware, was voluntarily commissioned by your client to support a supposed "good faith" settlement with Danielle, which had been ongoing for two years between her and Huntington mortgage servicing VP Gust Gianakis, in voluntarily recognizing her extraordinary salvage efforts and undue hardship in preserving collateral and financially absorbing a failed catastrophic insurance claim directly caused by the negligence of a Rick Obey-affiliated maintenance technician in mid-2021, which can be traced back to a specific invoice, as the bank continued to solicit and collect monthly mortgage payments from her for two years on a knowingly dead boat.

All of this happened long before your client damaged the vessel during its unlawful April 2025 seizure and subsequent interstate transport. Any post hoc "valuation" by a paid surveyor handpicked by the very party that seized, damaged, and misrepresented its legal status as mortgagee is not only

inadmissible—it's laughably self-serving.

Let's first be clear about the facts of acquisition: I located the Mangusta 92 myself online in March 2017, contacted the selling broker (Sam) directly, and agreed to a purchase price of €1,050,000 (approx. $1.12M). The next day, I submitted a signed LOI and a $50,000 wire deposit from my BBT account.

Rupert Gregory of Rick Obey Yacht Sales was inserted later under the pretense of assisting with importation and formalities, with a $100,000 published commission, as stated in official closing documents. Then, conveniently, following Rupert's phone calls with the French broker, the vessel was magically reappraised at $1,850,000—a 65% markup—based on a post-LOI survey.

That inflated figure had no basis in comparable sales or vessel condition at that time, which your own Verified Complaint now describes as merely "average." That highly convenient inflation though, just so happened to align with LTV guidelines on a $1.318M loan allegedly issued by Radius Bank—representing 123% of the contracted purchase price.

Meanwhile, the closing documents generated by Walter Morgan reflect only $736,779.82 in net cash disbursed from Radius Bank—barely 55% of the stated loan amount. The balance was apparently absorbed by phantom equity, inflated trade values, and whatever other voodoo Rick Obey's brokerage felt like conjuring at the time.

My Baia was assigned a bloated $800,000 trade-in value—then handed over free and clear of title liens. What I received was a glorified shell game. This wasn't a rounding error—it was a fraud pipeline. A tangled web of inflated values, ghost equity, and manufactured paperwork, all executed to juice commissions, bypass LTV limits, and close a loan that never should have been approved under such terms.

If you think I'll stand idly by while your client and its privateers attempt to "survey" a vessel they already stripped, relocated, and violated without court authorization, you've fundamentally misunderstood me in this case. Also, I note that your email failed to include M/Y Scratch LLC's sole owner—the very same lien claimant we all know by first name, and whose owner you just FedExed today, soliciting $400,000, binding signature, acceptance of a massive 1099-C, and an all-encompassing waiver of liability for you and your co-conspirators, to "release the vessel from arrest"—in the required conferral process under Local Rule 7.1(a)(3).

This, despite your stated intent to move to add her as a defendant and extinguish her lien. Your deliberate exclusion of a known interested party—whom you have already acknowledged informally and selectively when convenient, and now approached hat-in-hand for money and mercy—violates both the spirit and letter of the rule.

If you attempt to proceed any further without proper conferral, this additional procedural misconduct by all attorneys of record who have touched this case will be raised with the Court and the Florida Bar.

No survey conducted under these set of circumstances is independent, credible, or admissible. What you're proposing is not an appraisal—it's the next chapter in a cover-up, and what you're describing crosses into evidence tampering, not evidence gathering.

It is legally absurd to demand payment on a mortgage lien that was never properly filed, then attempted to enforce by way of a federal crime—specifically, an extrajudicial seizure in violation of the Ship Mortgage Act, which flatly prohibits such tactics when dealing with any U.S. Coast Guard-documented vessel secured by a First Preferred Ship Mortgage.

You are the maritime attorney here. Do you even understand how the law and Federal title documentation works?

I object to your proposed motions in their entirety.

Please govern yourself accordingly.

Dr. Stanley R. Kalish
Federally Documented Owner, M/Y Something About Meri


On Tuesday, June 17, 2025 at 01:25:25 PM PDT, Nick Zeher <nzeher@robertallenlaw.com> wrote:


Dr. Kalish,


We would like to file the following motions:

1. Leave to Amend to add M/Y Scratch LLC as a defendant to extinguish the improper lien it filed on the vessel;
2. Motion for judgment on the pleadings as to liability—meaning based on your answer, we would like the court to confirm you are liable for the debt. Then if granted, we can address exactly how much is owed;
3. Motion to have the vessel surveyed so we can assess the value.


The local rules require conferral on such motions. Please advise whether you agree or object.


Best Regards,

Nick

_____

Due to the high volume of e-mails I receive daily, your message may get overlooked. If you don't receive a reply within 48-hours, please resend your email with Christina Caristo at ccaristo@robertallenlaw.com  in copy – your communication is important to me.

**Nick Zeher**  |  Attorney at Law



303 Banyan Blvd. Suite 200
West Palm Beach, FL 33401
O:  +1 561.510.9606   |  D:  +1 561.510.9602
website        |       nzeher@robertallenlaw.com