**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF FLORIDA**

**IN ADMIRALTY**

HUNTINGTON NATIONAL BANK,  Case No.: 0:25-cv-61018-WPD

    *Plaintiff*,

v.

M/Y SOMETHING ABOUT MERI, her engines, machinery,
tackle, apparel, boats, furniture, equipment,
rigging, freights, and all other necessary
appurtenances, etc., *in rem*, and STANLEY R. KALISH,
*in personam*,

    *Defendant(s)*.
_____/

**PLAINTIFF'S MOTION FOR CONTEMPT AGAINST DANIELLE MORRON FOR
VIOLATION OF PROTECTIVE ORDER**

Plaintiff, Huntington National Bank ("Huntington"), respectfully moves this Court pursuant to its inherent authority and the Court's Protective Order entered October 16, 2025 [ECF No. 144], to hold intervenor Danielle Morron ("Morron") in civil contempt for willful and repeated violations of said Protective Order, and states as follows:

**Introduction**

Despite the entry of a Protective Order prohibiting harassment, threats, abusive communications, fabricated legal accusations, and improper conduct directed at parties and counsel, Morron has persisted in sending a steady stream of hostile, accusatory, and often threatening emails to Huntington's counsel, Huntington personnel, substitute custodians, and third parties. These communications have little or no relation to the merits of any pending motion and instead advance unsupported allegations of criminal conduct, fraud on the court, insurance fraud, RICO violations, and notarial crimes.

Morron's conduct is not merely uncivil or excessive—it is contumacious. It undermines the orderly administration of this case, violates explicit court-ordered restraints, and imposes significant and unnecessary burdens on the Court and the parties. The Court warned Morron numerous times in unmistakable terms that continued misconduct would result in sanctions. Those warnings have been ignored. Civil contempt relief is now warranted.

**Relevant Facts**

**I.      Background**

1.      On July 28, 2025, Huntington filed its Renewed Motion for Contempt and Motion for Protective Order Against Defendant Stanley R. Kalish and Non-Party Danielle Morron [ECF No. 103] ("Prior Motion"), seeking relief from Morron's systematic harassment campaign involving AI-generated pleadings with fabricated citations, threatening communications, extortionary demands, and interference with these proceedings.

2.      Following an evidentiary hearing on August 28, 2025, Magistrate Judge Patrick M. Hunt issued an Order on September 10, 2025 [ECF No. 138] granting Huntington's motion in part and ordering a protective order against Morron.

3.      On October 16, 2025, United States Magistrate Judge Hunt entered the Protective Order [ECF No. 144] ("Protective Order"), which specifically enjoined and restrained Morron from: (1) making threats, using abusive language, or engaging in conduct designed solely to intimidate, annoy, embarrass, or otherwise harass any Party associated with this case; (2) submitting pleadings containing fabricated case law or non-existent legal authorities; and (3) violating Federal Rules of Civil Procedure and Local Rules.

4.      The Protective Order explicitly warned that violations "may result in sanctions, including fines, attorneys' fees and costs, and such other relief as the Court deems just and proper."

5.      The Protective Order remains in full force and effect.

6. Notwithstanding the Protective Order, Morron has continued to send extensive, often multi-page emails on a near-weekly basis to Huntington's counsel, copying Huntington officers, substitute custodians, opposing counsel, and unrelated third parties. These communications have little to no relationship to any legitimate facts or issues in the instant case, and instead accuse Huntington and its counsel of criminal conduct without evidentiary support.

**II.     Accusations of Insurance Fraud**

7. On November 19, 2025, Morron sent an email entitled "Anticipated insurance fraud and intentional destruction of the res," in which she accused Huntington and its counsel of planning to deliberately destroy the arrested vessel in order to commit insurance fraud, attached hereto as **Exhibit A**. In that email, Morron asserted that "the only viable way for plaintiff to get paid is through insurance fraud," warned that any resulting insurance claim would be "the most costly case your firm has ever tried to defend," and demanded that counsel "reposition your sought after payout strategy accordingly." These statements constitute explicit accusations of criminal conduct and an overt threat intended to intimidate counsel.

**III.    Accusations of Fraud on the Court and Ethical Violations**

8. By email on November 9, 2025 attached hereto as **Exhibit B,** Morron accuses Huntington of filing a "materially perjured verified complaint."

9. On November 29, 2025, Morron sent another lengthy communication with the subject line "FW: Fraud on the Court – conferral," attached hereto as **Exhibit C,** wherein she repeated her accusations of perjury against Huntington. This email represents a further escalation in Morron's harassment campaign and contains some of the most serious violations of the Protective Order to date.

10. The November 29, 2025 email opened by attacking the undersigned counsel's professional integrity: "Telling the truth and representing matters ethically has never been Robert Allen Law's prevailing quality, but the floor is open through close of business Monday for whatever commentary you can muster to justify such non-waivable disqualifying attorney conduct using highly manipulated/perjured procedural maneuvers." This statement accuses counsel of habitual dishonesty, criminal perjury, and sets an arbitrary deadline for response. Ex. C.

11. Morron then accused counsel of ethics violations based on the false premise that Huntington's counsel represents National Liquidators, substitute custodian in this case. She claimed counsel had "parallel adverse representation of National/Kups in re Dragos Sprinceana's yacht," that "your firm already represented the named opponent- Kups/National Liquidators on the record," and that "the parallel action by RAL and Kups/liquidators in re Dragos' yacht" demonstrates unethical conduct. Ex. C.

12. These conflict accusations are factually false. Huntington's counsel does not represent National Liquidators in this case or in the unrelated case referenced in Morron's email involving a different bank and different yacht entirely. National Liquidators is the court-appointed substitute custodian in both cases and was appointed by the Court, not retained by counsel. Morron's false accusation that counsel represents National Liquidators is used as the foundation for baseless claims of conflicts of interest, ethics violations, and disqualifying conduct. Ex. C.

13. Morron then dramatically expanded her accusations to attack the entire law firm and its general business practices. She accused Robert Allen Law of having a "propensity to opportunistically and unlawfully harass owners by repeating the same binder of unethical practices and reverse-engineering lawfully structured copycat playbooks to capture federally documented yachts which have inherently large amounts of equity, then trying to rapidly liquidate and retitle

-4-

them in distress sales for pennies on the dollar in favor of shady banks by claiming disproportionate carrying costs and then pegging the owner's personal assets with a contrived deficiency." *Id*.

14. These accusations are not only baseless, they are defamatory. Morron is accusing counsel and their law firm of systematic criminal and unethical conduct affecting multiple clients and cases. She provides no evidence for these sweeping accusations. The sole purpose of this paragraph is to embarrass, harass, and intimidate counsel. *Id*.

15. Within the same November 29, 2025 email, Morron again accuses the undersigned of creating a "materially perjured verified complaint" in the unrelated case - an accusation of a federal crime. *Id*.

16. Finally, Morron threatened to file multiple sanctions motions: "I will be filing a fresh 60(d)(3) motion, as well as an OTC why the complaint should not be dismissed and the bank/attorneys sanctioned for fraud on the court." *Id*.

17. This email violates every provision of the Protective Order. It contains abusive language attacking counsel's professional integrity, explicit threats to file sanctions motions, baseless accusations of criminal conduct (perjury, fraud on the court), defamatory statements about the law firm's business practices, and conduct designed solely to intimidate, annoy, embarrass, and harass. The email advances no legitimate litigation interest and serves only to burden and intimidate opposing counsel. *Id*.

18. Even after Huntington's counsel made it explicitly clear they did not represent National Liquidators, Morron continued her baseless accusations of ethical violations regarding National Liquidators by email on December 5, 2025 (attached hereto as **Exhibit D**) wherein Morron copied and pasted directly from the undersigned's response to a Florida Bar complaint (filed by Morron against Huntington's counsel asserting similar unfounded allegations of ethical

misconduct) in an apparent attempt to harass Huntington's counsel into acquiescing to her demands.

### IV.   Extortion

19.   Morron's recent harassment has also included continuous accusations that Huntington and/or its counsel have engaged in extortion in some capacity.  In another email on December 5, 2025 (attached hereto as **Exhibit E**),  Morron refers to Huntington's prior discussions regarding repayment as seeking an "extortionate wire transfer," and then threatened "I will be filing a motion regarding false certification or improper service for all your other motion and filings. Please govern yourself accordingly." *Id.*   While Morron accuses Huntington and the undersigned of criminal conduct, her threats of additional harm against Huntington could be considered extortionate themselves.

### V.   Illegal Recording of Conversation

20.   Morron sent an email on December 6, 2025 notifying the undersigned of Morron's intent to file a Motion for Summary Judgment against Huntington, and in support thereof, Morron attached a written transcript of a November 21, 2025 conferral meeting between the undersigned, Morron, and counsel for Kalish regarding scheduling orders and procedural matters, a true and correct copy of which is attached hereto as **Exhibit F.**   The existence of this transcript suggests Morron recorded the conversation illegally,  as the undersigned was not aware the conversation was being recorded and did not consent to same.

### VI.   Intimidation Tactics Claiming Presidential Involvement

21.   On December 8, 2025, at 1:59 AM, Morron sent an email along with her purported Motion for Summary Judgment that contained a bizarre statement clearly designed to intimidate

counsel, attached hereto as **Exhibit G.** In that email, Morron stated: "Barack Obama is reading this email in blind copy. Please govern yourselves accordingly."

22. This statement serves no legitimate litigation purpose whatsoever. It is a pure intimidation tactic designed to create a false impression that a former President of the United States is monitoring counsel's communications and that counsel should modify their conduct based on this purported surveillance. The statement is absurd on its face, as former President Obama is unlikely to monitor litigation emails in a maritime foreclosure case, yet Morron includes it deliberately to harass and intimidate. The directive "Please govern yourselves accordingly" makes the intimidating intent explicit: counsel should supposedly alter their behavior based on this purported presidential oversight. This bizarre tactic demonstrates Morron's continued escalation of harassing conduct designed to intimidate and embarrass counsel. Ex. G.

### VII. Accusations of Criminal Conduct Relating to Affidavit

23. Throughout her post-Protective Order communications, Morron has repeatedly accused Huntington of fraud relating to Huntington's corporate succession history, most recently attacking the affidavit filed as Exhibit A to Huntington's Motion for Interlocutory Sale [ECF No. 165-1] (the "Huntington Affidavit").

24. The Huntington Affidavit was executed and notarized on April 7, 2025 by Huntington employee Elizabeth Heikes as part of Huntington's ordinary course of business and contains a single, straightforward sentence: "The Huntington National Bank is the successor in interest of Chemical Bank by merger with TCF and operates under the name, charter and Federal Tax Identification Number (31-0966785) of The Huntington National Bank."

25. This affidavit states publicly verifiable facts about corporate structure and succession that is publicly verifiable. Attached are the current FDIC details for Chemical Bank

confirming Huntington as the successor of Chemical Bank (**Exhibit H**), and the FDIC history of Chemical Bank confirming the institution was merged with TCF in 2019 and merged with Huntington in 2021, as indicated in the affidavit in question (**Exhibit I**).

26. Despite the straightforward nature of the Huntington Affidavit, Morron sent an email on December 11, 2025 entitled "FRAUDULENT AFFIDAVIT OF HUNTINGTON OFFICER HACKEY AND FRAUD ON THE COURT," attached hereto as **Exhibit J**, accusing a Huntington officer and undersigned counsel of submitting a "fraudulent" and "backdated" affidavit and asserted that the filing constituted "fraud on the court" and part of a "RICO pattern of corporate fraud."

27. Morron has accused Huntington of "backdating" the signature on the Huntington Affidavit and committing perjury. Ex. J. The accusation of "backdating" appears to be based on Morron's confusion about when the affidavit was executed versus when it was filed. The April 7, 2025 date reflects when the affidavit was actually signed and notarized in the ordinary course of Huntington's business. There is nothing improper, unusual, or "backdated" about an affidavit being executed for a separate purpose months before it is filed with a court. She has not identified any inconsistency in the affidavit, any contradiction with public records, or any reason to doubt its authenticity. She has simply made repeated accusations of fraud and perjury.

28. In that same email, Morron imposed a unilateral deadline and demanded that Huntington withdraw the Huntington Affidavit and portions of its interlocutory sale motion by a specified time, stating that failure to comply would result in her filing motions to strike, seeking sanctions, subpoenaing witnesses, and pursuing additional relief. Ex. J.

29. The email was not confined to counsel of record. Morron copied Huntington corporate officers and others, amplifying the reputational pressure and transforming a purported "conferral" into a public accusation of criminal misconduct.  Ex. J.

30. Later that same evening, Morron circulated a second email attached hereto as **Exhibit K,** entitled "CRIMINAL STATUTES IMPLICATED IN POTENTIAL NOTARIAL FRAUD," in which she enumerated numerous federal criminal statutes (including wire fraud, obstruction of justice, witness tampering, and perjury) that she claimed were "implicated" by the Huntington Affidavit. She framed the issue as one of potential criminal liability and referenced outreach to governmental authorities.

31. Read together, these communications unmistakably convey a threat: unless Huntington withdrew the affidavit and altered its litigation position, Morron would escalate the matter by pursuing criminal accusations, subpoenas, sanctions, and referrals. Ex. J and K. The communications thus seek to obtain litigation concessions through fear of reputational, professional, and criminal consequences, rather than through lawful advocacy.

### VIII. Questionable Conferral Attempts

32. On December 13, 2025, Morron sent a multi-page email titled "E(5) Conferral – Risk of Loss in Non-NVDC Title Negotiations (Forde v. Krantz Motor Yachts LLC)" attached hereto as **Exhibit L.**  While labeled "good-faith conferral," the email presents comprehensive legal arguments challenging Huntington's standing, cites case law, discusses statutory provisions, and demands that Huntington "advise Huntington's position on" detailed questions. This continues Morron's pattern of sending lengthy legal briefs via email rather than filing properly noticed motions subject to page limits and judicial review.

33. Her "conferral" attempts have also included non-nonsensical communications that serve no apparent purpose. On December 18, 2025, Morron sent an email to the undersigned with

several unexplained photograph attachments (true and correct copies of the email and photographs are attached hereto as **Composite Exhibit M.)** While the email is disguised as an attempt at conferral, Morron's email asks the undersigned to confer "whether it appears [Morron is] living or dead in the photographs" and states "[t]his is not a trick question." Comp. Ex. M. The photographs in question depict Morron onboard the Vessel prior to its arrest and bear no relation to the issues at hand. Comp. Ex. M. Instead, this appears to be another attempt to harass or annoy Huntington with unnecessary and bizarre communications.

### IX. Pattern, Escalation, and Harassment Through Repetition

34. Morron's practice of repeatedly asserting meritless arguments by email that this Court has already decided constitutes harassment. She is not presenting these arguments through proper motions subject to judicial review and procedural rules. Instead, she sends emails repeating the same baseless accusations over and over, forcing counsel to address the same rejected arguments in multiple contexts. This repetitive assertion of meritless arguments (particularly arguments the Court has explicitly rejected) serves no legitimate purpose and is designed solely to harass, burden, and intimidate.

35. The communications described above are not isolated. Since October 16, 2025, Morron has sent dozens of emails containing threats, baseless accusations of fraud and criminal conduct, defamatory statements, bizarre intimidation tactics, demands with arbitrary deadlines, and the systematic repetition of meritless arguments this Court already rejected.

36. Morron's conduct has escalated rather than abated following entry of the Protective Order. This escalation demonstrates willful contempt for this Court's authority and deliberate defiance of the Court's explicit commands.

## MEMORANDUM OF LAW

### I. LEGAL STANDARD

There is "no question" that courts have the inherent power to use a civil contempt proceeding to enforce their orders. *Shillitani v. United States*, 384 U.S. 364, 370, 86 S.Ct. 1531, 1535, 16 L. Ed. 2d 622 (1966). "The civil contempt power is essential to the enforcement of the judgments, orders, and writs of the courts, and consequently to the due administration of justice." *SEC v. Monterosso,* No. 07-61693-CIV, 2015 U.S. Dist. LEXIS 190700, at *8 (S.D. Fla. July 29, 2015). "Obedience of judicial orders is of paramount importance and courts do not lightly excuse a failure to comply." *Id.*

Entry of civil contempt is appropriate when "(1) the allegedly-violated order was valid and lawful; (2) the order was clear, definite and unambiguous; and (3) the alleged violator had the ability to comply." *Blanco GmbH + Co. KG v. Vlanco Indus., LLC,* No. 12-61580-CIV-LENARD/GOODMAN, 2014 U.S. Dist. LEXIS 187274, at *22 (S.D. Fla. Dec. 19, 2014) (internal citation omitted). Civil contempt "may be imposed in an ordinary civil proceeding upon notice and an opportunity to be heard*.*" *Serra Chevrolet, Inc. v. GMC*, 446 F. 3d 1137, 1147 (11th Cir. 2006) (internal citation omitted). "The absence of willfulness is not a defense to a charge of civil contempt." *FTC v. Leshin*, 618 F. 3d 1221, 1232 (11th Cir. 2010) (citing *McComb v. Jacksonville Paper Co*., 336 U.S. 187, 191 (1949)).

Federal courts possess inherent authority to sanction conduct that "abuses the judicial process" through "harassment, repeated and endless delay, mountainous expense and waste of financial resource." *Chambers v. NASCO, Inc*., 501 U.S. 32, 45 (1991); *Flannery v. USAA Gen. Indem. Co*., 2025 U.S. Dist. LEXIS 57969, at *3 (S.D. Fla. 2025). These sanctions can include attorney's fees. *Chambers*, 501 U.S. at 45 (1991).

Courts within this circuit have readily applied these principles to address harassment of a party or party's counsel during litigation. In *Kassem v. Martin*, 2017 U.S. Dist. LEXIS 208865, at *3 (M.D. Fla. 2017), the court emphasized that its "inherent power extends to a full range of litigation abuses." *See also Flannery v. USAA Gen. Indem. Co.*, 2025 U.S. Dist. LEXIS 57969, at *3 (S.D. Fla. 2025) (this Court exercised its inherent authority to "control and regulate the proceedings" to address a situation where a pro se litigant engaged in threatening and offensive communications with opposing counsel).

## II. MORRON IS IN WILLFUL CONTEMPT OF THE PROTECTIVE ORDER
### a. The Protective Order Is Valid and Enforceable

On October 16, 2025, this Court entered a clear and specific Protective Order [ECF No. 144] that enjoined and restrained Morron from: (1) making threats, using abusive language, or engaging in conduct designed solely to intimidate, annoy, embarrass, or otherwise harass any Party; (2) submitting pleadings containing fabricated case law; and (3) violating Federal Rules of Civil Procedure and Local Rules.

The Protective Order was entered pursuant to this Court's inherent authority and Federal Rule of Civil Procedure 26(c), following Huntington's Motion for Protective Order and an evidentiary hearing. The order is valid, enforceable, and was properly entered within the Court's authority.

### b. Morron Has Willfully and Repeatedly Disobeyed the Protective Order

Morron has willfully violated every provision of the Protective Order through a systematic campaign of harassment that has escalated since the order's entry.

First, Morron has violated Paragraph 1 of the Protective Order, which prohibits "making threats, using abusive language, or engaging in conduct designed solely to intimidate, annoy,

embarrass, or otherwise harass any Party." Morron's emails contain explicit threats ("it will be the most costly case your firm has ever tried to defend"), accusations of criminal conduct without evidentiary support ("insurance fraud," "materially perjured procedural maneuvers," "fraud on the court," "extortionate wire transfers"), and defamatory statements about counsel's professional practices. These communications are designed to intimidate and harass, not to advance legitimate litigation interests.

Morron's November 29, 2025 statement that "Telling the truth and representing matters ethically has never been Robert Allen Law's prevailing quality" is abusive language attacking professional integrity. Her accusations that counsel engages in "opportunistically and unlawfully harass[ing] owners" for "shady banks" are defamatory statements designed to embarrass and harass. Her December 8 statement that "Barack Obama is reading this email in blind copy. Please govern yourselves accordingly" is a bizarre intimidation tactic designed to create false impressions of presidential oversight and involvement.

Similarly, Morron's baseless accusations regarding the Huntington Affidavit demonstrate the harassing nature of her conduct. The Affidavit contains straightforward, verifiable information about corporate succession. Morron's unfounded accusations of backdating and perjury, made without any evidentiary support, are designed solely to harass and intimidate.

Morron's violations are not inadvertent. They represent a deliberate, systematic campaign to defy this Court's authority. Rather than complying with the Protective Order, Morron has escalated her harassing conduct, demonstrating contempt for judicial authority.

### III. SANCTIONS ARE NECESSARY

Sanctions against Morron are warranted because: (1) Morron received explicit notice and warnings; (2) violations have been systematic over two months; (3) conduct has escalated after the

Order, including bizarre intimidation tactics; (4) violations are willful, calculated, and include relitigating settled issues through repetitive meritless arguments and making false factual accusations; (5) violations cause ongoing harm; (6) communications include extortionate elements (conditional threats designed to influence counsel's conduct); and (7) prior remedies have proven ineffective.

The Protective Order itself warned that violations "may result in sanctions, including fines, attorneys' fees and costs, and such other relief as the Court deems just and proper." Morron was on notice that violations would result in escalating consequences. Her decision to flagrantly violate the order anyway demonstrates contempt for judicial authority that requires a strong response to preserve the integrity of this Court's orders.

## **CONCLUSION**

Morron has willfully and repeatedly violated this Court's Protective Order through a systematic campaign of harassment, threats, and baseless accusations of criminal conduct. Her conduct represents a direct affront to judicial authority and threatens the orderly administration of justice. Despite clear notice of the Protective Order's prohibitions and explicit warnings regarding sanctions, Morron has chosen to escalate rather than cease her harassing conduct.

The Court's prior remedies have proven ineffective. Stronger measures are now necessary to protect Huntington's legitimate litigation rights, preserve the integrity of judicial proceedings, and coerce Morron's compliance with this Court's orders. Huntington respectfully submits that the evidence presented herein establishes, by clear and convincing evidence, that Morron is in contempt of this Court's Protective Order and that enhanced sanctions, compensatory attorneys' fees, and injunctive relief are warranted and necessary.

Case No.: 0:25-cv-61018-WPD

WHEREFORE, Plaintiff respectfully requests that this Court:

1. Find Danielle Morron in civil contempt of Court for willfully violating the Protective Order [ECF No. 144];

2. Strike all pleadings and other filings submitted by Morron;

3. Dismiss Morron from this case with prejudice;

4. Impose appropriate sanctions including attorneys' fees and costs incurred in reading and responding to her misconduct;

5. Enter an enhanced protective order prohibiting Morron from:

    a. Communicating with Huntington in any manner; and

    b. Communicating to the undersigned lawyers in any manner except through properly filed court documents or with prior written approval from this Court;

6. Waive any Local Rule 7.1(a)(3)(A) conferral requirement when it comes to any filings directed at Morron; and

7. Grant such other and further relief as this Court deems just and proper.

Dated: <u>December 19, 2025</u>         Respectfully submitted,

/s/ *Nicholas J. Zeher*
Nicholas J. Zeher, Esq. (Fla. Bar No. 1003565)
Serena A. Witter, Esq. (Fla. Bar No. 45216)
ROBERT ALLEN LAW
The Four Seasons Office Tower
1441 Brickell Avenue, Suite 1400
Miami, Florida 33131
Tel.:  (305) 372-3300
Fax:  (305) 379-7018
Email: nzeher@robertallenlaw.com
         switter@robertallenlaw.com
         litigation@robertallenlaw.com
*Counsel for Plaintiff*

Case No.: 0:25-cv-61018-WPD

## CERTIFICATE OF GOOD FAITH CONFERRAL

Pursuant to Local Rule 7.1, the undersigned has warned Danielle Morron in writing that her emails were sent in violation of the protective order yet Morron continues to harass and threaten the undersigned and Huntington. Any further conferral on this issue would be futile.

Dated: December 19, 2025

Respectfully submitted,

/s/ Nicholas J. Zeher
Nicholas J. Zeher, Esq. (Fla. Bar No. 1003565)
Serena A. Witter, Esq. (Fla. Bar No. 45216)
ROBERT ALLEN LAW
The Four Seasons Office Tower
1441 Brickell Avenue, Suite 1400
Miami, Florida 33131
Tel.:   (305) 372-3300
Fax:   (305) 379-7018
Email: nzeher@robertallenlaw.com
          switter@robertallenlaw.com
          litigation@robertallenlaw.com

*Counsel for Plaintiff*

Case No.: 0:25-cv-61018-WPD

## CERTIFICATE OF SERVICE

IT IS HEREBY CERTIFIED that a true and correct copy of the foregoing was served via the CM/ECF system to intervenor Danielle Morron and counsel for Defendant Stanley Kalish this 19th day of December, 2025.

Respectfully submitted,

/s/ Nicholas J. Zeher
Nicholas J. Zeher, Esq. (Fla. Bar No. 1003565)
Serena A. Witter, Esq. (Fla. Bar No. 45216)
ROBERT ALLEN LAW
The Four Seasons Office Tower
1441 Brickell Avenue, Suite 1400
Miami, Florida 33131
Tel.:   (305) 372-3300
Fax:   (305) 379-7018
Email: nzeher@robertallenlaw.com
          switter@robertallenlaw.com
          litigation@robertallenlaw.com

*Counsel for Plaintiff*