**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA**

**IN ADMIRALTY**

HUNTINGTON NATIONAL BANK,                    Case No.: 0:25-cv-61018-WPD

    *Plaintiff*,

v.

M/Y SOMETHING ABOUT MERI, her engines, machinery,
tackle, apparel, boats, furniture, equipment,
rigging, freights, and all other necessary
appurtenances, etc., *in rem*, and STANLEY R. KALISH,
*in personam*,

    *Defendant(s)*.
_____/

**PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
AGAINST THE *IN REM* DEFENDANT, M/Y SOMETHING ABOUT MERI,
AND <u>THE *IN PERSONAM* DEFENDANT, STANLEY R. KALISH</u>**

COMES NOW, the Plaintiff, HUNTINGTON NATIONAL BANK ("Huntington"), through its undersigned counsel, and pursuant to Federal Rule of Civil Procedure 56, hereby files its Motion for Summary Judgment against the *in rem* Defendant M/Y SOMETHING ABOUT MERI (the "Vessel") and the Defendant STANLEY R. KALISH ("Kalish"). Citations to evidence are included by reference to the Statement of Material Facts filed contemporaneously, pursuant to Southern District of Florida Local Rule 56.1 ("Statement of Material Facts").

**INTRODUCTION**

Defendant Stanley R. Kalish ("Kalish") obtained a One Million Three Hundred Eighteen Thousand and 00/100 Dollars ($1,318,000.00) loan from Radius Bank (the "Loan") secured by a First Preferred Ship Mortgage (the "Mortgage") on the Vessel. The Loan was memorialized in a

1

Marine Note and Security Agreement (together with the Mortgage, the "Loan Agreement"). [ECF No. 1, Ex. A; Statement of Material Facts, Ex. C].

Radius Bank later assigned all its rights under Loan Agreement to Chemical Bank. [Statement of Material Facts, at ¶ 7]. Huntington is the successor in interest to Chemical Bank by merger with TCF Bank and assumes the lender's position under the Note and Mortgage. [*Id.*, at ¶ 8]. The validity of the Loan Agreement and Huntington's ability to enforce it are uncontested by Kalish. [*Id.*, at ¶ 38].

Kalish ceased making monthly payments on the Loan after July 5, 2024, with only one partial payment received on October 23, 2024, and no payments since. [Statement of Material Facts at ¶ 23]. Kalish does not dispute that he is in default on the Loan and is financially incapable of making timely payment. [*Id.* at ¶¶ 39-40]. As of the filing of this Motion, the principal amount owed is $1,048,084.77, plus interest that continues to accrue. [*Id.* at ¶ 45].

Kalish has further defaulted by allowing the Vessel to catastrophically deteriorate from "exceptional condition" with a value of $1,850,000 in April 2017 to "not functional" with a value of only $312,500 to $575,092 by September 2024, a loss of over $1.2 million in value. [Statement of Material Facts, at ¶¶ 26-31]. Additionally, Kalish breached the Loan Agreement by allowing maritime liens totaling over $1 million to be placed on the Vessel by third parties.[1] [*Id.* at ¶ 25].

The Vessel was formally arrested by the United States Marshal on June 19, 2025, pursuant to a Warrant issued by this Court. [*Id.* at ¶ 33]. The Court appointed G. Robert Toney & Associates, Inc. d/b/a National Maritime Services as substitute custodian of the Vessel. [*Id.* at ¶ 35]. The Vessel has not been bonded out and remains under arrest. [*Id.* at ¶ 34]. No party other than Huntington

---

[1] The validity of the lien filed by Intervenor Morron is contested by Huntington. This statement is not an admission by Huntington that such a lien is valid.

holds a judicially recognized proprietary interest in the Vessel, and no competing maritime lien has been established. [*Id.* at ¶ 44].

These undisputed facts demonstrate that Kalish is in material default under the Loan Agreement, triggering Huntington's contractual right to foreclose on the Mortgage. There is no genuine issue of material fact in this matter, as supported by Kalish's key admissions made under oath before this Court. In light of the undisputed material facts, Huntington is entitled to judgment as a matter of law foreclosing its maritime lien against the Vessel *in rem* and finding Kalish in default of the Loan Agreement.

## **LEGAL STANDARD**

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Marquez v. Costco Wholesale Corp.*, 550 F. Supp. 3d 1256, 1271–72 (S.D. Fla. 2021) (quoting *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir. 1997)) (internal quotations omitted). When "there is no genuine issue as to any material fact" and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). An issue is genuine if there is sufficient evidence such that a reasonable jury could return a verdict for either party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). Similarly, an issue is material if it may affect the outcome of the suit under governing law. *Id.*

The moving party bears the burden of showing the absence of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). In deciding whether the moving party has met this initial burden, the Court must review the record

and all reasonable inferences drawn from the record in the light most favorable to the non-moving party. *Whatley v. CNA Ins. Co.*, 189 F. 3d 1310, 1313 (11th Cir. 1999).

Once the Court determines that the moving party has met its burden, the burden shifts, and the non-moving party must present specific facts showing that there is a genuine issue for trial that precludes summary judgment. *Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986). "The evidence presented cannot consist of conclusory allegations, legal conclusions or evidence which would be inadmissible at trial." *Demyan v. Sun Life Assurance Co. of Canada*, 148 F. Supp. 2d 1316, 1320 (S.D. Fla. 2001) (citing *Avirgan v. Hull*, 932 F. 2d 1572, 1577 (11th Cir. 1991)). Failure to show sufficient evidence of any essential element is fatal to the claim and the Court should grant the summary judgment. *Celotex*, 477 U.S. at 322-323.

## ARGUMENT

**I.    A VALID AND ENFORCEABLE SHIP'S MORTGAGE EXISTS ON THE VESSEL**

Huntington's Mortgage satisfies all statutory requirements for enforcement under federal maritime law. Under federal maritime law, a preferred mortgage is a mortgage that: (1) includes the whole of the vessel; (2) is filed in substantial compliance with 46 U.S.C. § 31321; and (3) covers a documented vessel. 46 U.S.C. § 31322(a).  Upon default of any term of a preferred mortgage, the mortgagee may file suit to enforce the preferred mortgage lien in a civil action in rem for a documented vessel. *See* 46 U.S.C. § 31325(b)(1), (2); *Cap. One, N.A. v. M/Y Voyager*, No. 08-20960-CIV-LENARD/GARBER, 2008 U.S. Dist. LEXIS 129472, at *7 (S.D. Fla. Nov. 6, 2008).

First, the Mortgage covers the entire Vessel, including "her engines, machinery, tackle, apparel, boats, furniture, equipment, rigging, freights, and all other necessary appurtenances."

[Statement of Material Facts, at ¶ 5]. Second, the Mortgage was properly filed with the U.S. Coast Guard National Vessel Documentation Center on May 5, 2017, and the Assignment to Chemical Bank was filed on June 27, 2018. [*Id.,* at ¶¶ 6, 7]. Third, the Vessel is a documented vessel bearing Official Number 1278223. [*Id.,* at ¶ 2].

Under 46 U.S.C. § 31325(b)(1), a preferred mortgagee "may bring a civil action in rem to enforce the preferred mortgage lien" upon the mortgagor's default. As Chemical Bank's successor, Huntington stepped into the lender's position under the Note and Mortgage with full authority to enforce all contractual rights and remedies. [*Id.,* at ¶ 8].

Therefore, Huntington holds a valid Mortgage and is entitled to enforce it through judicial foreclosure.

## II.     KALISH IS IN MATERIAL DEFAULT UNDER THE LOAN AGREEMENT

Kalish has breached the Loan Agreement in multiple material respects, each of which independently constitutes an Event of Default under the Note and Mortgage and triggers Huntington's right to accelerate the debt and foreclose on the Vessel. The Loan Agreement defines Events of Default with precision, and Kalish's conduct falls squarely within multiple enumerated categories.

### A.     Payment Default

The terms of the Loan Agreement are undisputed. The Loan Agreement required Kalish to make 240 monthly installment payments of $8,161.51 each, starting on June 5, 2017 and due on the same day of each month thereafter through May 5, 2037. [Statement of Material Facts at ¶ 9]. Kalish is in default if "any payment of Principal or interest or any other sum is not paid when it is due" under the Loan Agreement [*Id.,* at ¶ 12].

5

It is undisputed Kalish materially breached the Loan Agreement by consistently failing to make the required monthly payments since July 2024. [*Id.,* at ¶¶ 23, 37].

Kalish received multiple past due notices and other correspondence from Huntington demanding payment, none of which have been successful. [*Id.,* at ¶ 24]. Kalish has offered no explanation for his failure to make payments and has demonstrated no ability to cure these defaults. As a result of Kalish's payment defaults, the principal amount of $1,048,084.77 is now due and payable to Huntington, plus all interest and charges that have accrued and continue to accrue. [*Id.,* at ¶ 43].

### B. Vessel Deterioration Default

Beyond simple nonpayment, the undisputed record establishes multiple additional defaults. The Loan Agreement provides that Kalish is in default if he "permits the Vessel to deteriorate and lessen in value or the Vessel becomes valueless other than through normal depreciation." [Statement of Material Facts, at ¶ 13.

This default is independently established by overwhelming documentary evidence spanning multiple professional surveys and inspections which confirm the Vessel deteriorated dramatically while under Kalish's ownership. It declined from a vessel valued at approximately $1.85 million and described as being in "exceptional" or "generally satisfactory" condition at loan origination, to a non-functional vessel suffering from systemic mechanical, electrical, and structural failures. [Statement of Material Facts at ¶¶ 26-35]. This deterioration directly violated Kalish's affirmative contractual obligation to maintain the Vessel in good condition, working order, and seaworthy condition.

### C.       Additional Liens Default

Kalish also permitted maritime liens and claims to be asserted against the Vessel without Huntington's consent, in direct contravention of the Mortgage covenants prohibiting additional encumbrances. [Statement of Material Facts at ¶ 14].

The undisputed evidence establishes that Kalish further defaulted on the Loan Agreement by permitting multiple maritime liens to be filed against the Vessel without Huntington's consent, in direct contravention of the Mortgage covenants prohibiting additional encumbrances. [Statement of Material Facts, at ¶¶ 15, 23, 25]. Saga Haven Inc. filed a maritime lien on April 23, 2024, in the amount of $22,500.00 (subsequently terminated on August 7, 2024), and a second lien was filed on August 1, 2024, in the amount of $40,500.00, which remains active. [*Id.,* at ¶ 25].

These liens demonstrate Kalish's broader pattern of financial distress and his failure to meet obligations to multiple creditors. The presence of unauthorized liens on the Vessel constitutes independent default under the Loan Agreement, triggering Huntington's foreclosure rights.

### D. Insecurity Clause Defaults

Kalish has additionally triggered the insecurity clause defaults under Sections 42(m) and 42(n) of the Note, which authorizes the Bank to declare default when it "in good faith reasonably believes" that events endanger Kalish's ability to pay or jeopardize the Vessel's value. [Statement of Material Facts at ¶¶15-18]. These provisions protect maritime lenders from borrowers whose financial condition or asset management threatens repayment.

Huntington reasonably believed Kalish could not timely pay the sums due under the Loan Agreement based on overwhelming evidence. [Statement of Material Facts at ¶¶ 23-25]. Kalish completely ceased making regular payments after July 5, 2024, demonstrating financial inability to meet basic monthly obligations of $8,161.51. [*Id.,* at ¶ 23]. Despite multiple demands and

collection efforts, Kalish has made zero payments since October 23, 2024. [*Id,* at ¶ 24]. Other creditors have filed maritime liens against the Vessel, including Saga Haven Inc.'s $40,500 active lien, evidencing Kalish's broader pattern of financial distress and inability to pay debts as they become due. [*Id.,* at ¶ 25]. Kalish's complete cessation of payments, coupled with other creditors' pursuit of maritime liens and Kalish's own admissions that he did not have the money for the payments, provides objective evidence supporting Huntington's good faith belief that Kalish cannot timely pay. [*Id.,* at ¶ 40].

Under the express terms of the Loan Agreement, Huntington was not required to await total insolvency[2] or the complete destruction of the collateral before acting. [Statement of Material Facts at ¶ 18]. Once Huntington reasonably believed that the prospect of payment or performance was impaired, it was contractually entitled to declare a default, accelerate the indebtedness, and pursue foreclosure remedies. [*Id.*, at ¶¶ 19-22]. Accordingly, the undisputed facts establish multiple, independent Events of Default as a matter of law, each of which give Huntington the right to the relief sought herein.

### III. KALISH ADMITTED UNDER OATH TO HIS MULTIPLE DEFAULTS

Kalish's sworn testimony is admissible hearsay and, therefore, may be considered in the instant Motion for Summary Judgment pursuant to the party-opponent exception under Federal Rule of Evidence 801(d)(2).[3] *See generally Bush v. Houston County Comm'n*, 414 Fed. Appx. 264, 267 (11th Cir. 2011).

---

[2] During multiple phone conferences with Kalish's counsel, it was conveyed to the undersigned that Kalish's counsel was referred this case by bankruptcy counsel insinuating Kalish is nearing insolvency.
[3] "A statement qualifies under [the party opponent] exclusion when it is … the party's own statement, in either an individual or a representative capacity . . . ." *Houston County Comm'n*, 414 Fed. Appx. at 267 (11th Cir. 2011) (quoting Fed. R. Evid. 801(d)(2)).

On August 28, 2025, a full evidentiary hearing was held in this matter, during which Kalish testified under oath and made several material admissions ("Evidentiary Hearing"). [Statement of Material Facts at ¶ 37]. During his testimony, Kalish affirmed the validity of the Loan Agreement and acknowledged Huntington's ownership of the Mortgage. [Statement of Material Facts at ¶ 38].

Kalish also testified regarding his multiple defaults under the Loan. With respect to the payment default, Kalish expressly admitted "I never denied that we owed money to the bank." [*Id.* at ¶ 39]. As to the insecurity clause default, Kalish testified to his financial distress and admitted that he cannot afford to make timely monthly payments on the Loan, stating "I don't have the money to pay" and "I didn't have money to put into the boat … certainly not the $8,000 mortgage payment that was required." [*Id.* at ¶ 40].

Kalish's sworn testimony admitting to multiple material defaults conclusively establishes there is no genuine dispute of material fact that Kalish breached the Loan Agreement, entitling Huntington to judgment as a matter of law.

## III.   HUNTINGTON IS ENTITLED TO FORECLOSE ON THE PREFERRED MORTGAGE

46 U.S.C. § 31325 provides in relevant part as follows:

(a) A preferred mortgage is a lien on the mortgaged vessel in the amount of the outstanding mortgage indebtedness secured by the vessel.

(b) On default of any term of the preferred mortgage, the mortgagee may—

   (1) enforce the preferred mortgage lien in a civil action in rem for a vessel to be documented under chapter 121 of this title, a vessel titled in a State, or a foreign vessel….

Upon Kalish's default, The Loan Agreement provides Huntington with the right to judicially foreclose the Mortgage lien on the Vessel. [Statement of Material Facts at ¶ 21].

9

The Loan Agreement additionally provides Huntington with extensive rights regarding the disposition and use of the Vessel following repossession, including the right to hold, operate, lay up, render temporarily unfit for use, and sell the Vessel free from any claim by Kalish. [*Id.* at ¶ 22].

Given Kalish's multiple material defaults (payment default, vessel deterioration, third-party liens, and insecurity), Huntington has satisfied all requirements for enforcement of its Mortgage lien against the Vessel in rem. There is no genuine issue of material fact, and Huntington is entitled to judgment as a matter of law.

### E. DAMAGES

The Loan Agreement expressly entitles Huntington, upon default, to recover all sums due and owing, including unpaid principal, accrued and accruing interest, late charges, protective advances, custodial expenses, attorneys' fees, and costs. [Statement of Material Facts at ¶ 19, 21]. Huntington properly exercised its contractual right to accelerate the debt by filing this foreclosure action and obtaining arrest of the Vessel on June 19, 2025. [ECF No. 61]. The entire remaining balance of the loan through its maturity date of May 5, 2037 is now immediately due and owing.

As of the commencement of this action, and as further supported by sworn affidavit, the unpaid principal balance due to Huntington exceeded $1,048,000.00, together with accrued interest, which continues to accrue at the contractual rate until entry of judgment. [Statement of Material Facts at ¶ 45].

The Loan Agreement provides that upon default, Huntington may institute the Default Rate until all of the obligations have been fully paid. [Statement of Material Facts at ¶ 21]. The Default Rate under the Note is 9.25% per annum (5 percentage points above the contract rate of 4.25%).

[*Id.* at ¶ 10]. As a result of Kalish's multiple defaults, Huntington is entitled to prejudgment interest at the Default Rate of 9.25% through entry of judgment.

In addition to principal and interest, Huntington is contractually entitled to recover all reasonable costs and expenses incurred to protect and enforce its rights in the collateral. [Statement of Material Facts at ¶ 21]. As provided in the Loan Agreement, Huntington is entitled to recover "all collection, enforcement and court costs … and all attorneys' fees," including costs of retaking, maintaining, repairing, cleaning, storing, and selling the Vessel. [*Id.*]

Based on the undisputed evidence of Kalish's defaults, Huntington is entitled to recover all such costs and fees as part of the judgment. Through December 2025, Huntington's damages are as follows:

- Principal balance: $1,048,084.77
- Interest: $8,275.76
- National Liquidator custodial fees: $129,497.77
  **Total: $1,185,938.30**

[Statement of Material Facts at ¶ 45].

Additionally, custodial costs continue to accrue at a rate of $10,680 to $11,006 per month while the Vessel remains under arrest. [*Id.* at ¶ 35]. Huntington is also entitled to recover all attorneys' fees and costs incurred in this enforcement action. [4] [*Id.* at 21].

## **CONCLUSION**

The material facts are undisputed, and Huntington is entitled to judgment as a matter of law. Through Kalish's own sworn admissions, Kalish is in material default under multiple provisions of the Loan Agreement. Huntington holds a valid First Preferred Ship Mortgage properly recorded with the U.S. Coast Guard. Under 46 U.S.C. § 31325(b)(1) and under the express

---

[4] This amount is yet to be determined due to the multiple pending motions, specifically the Motion for Interlocutory Sale of Vessel. Based on the Court's decision on the Motion for Interlocutory Sale, Huntington will incur additional legal fees in the process. Therefore, Huntington reserves its right to seek its legal fees when the vessel is sold or at the conclusion of this case.

terms of the Loan Agreement, Huntington is entitled to foreclose the Preferred Ship Mortgage and recover all amounts due.

WHEREFORE, Plaintiff, Huntington National Bank, respectfully requests that this Court enter summary judgment in its favor and against Defendants as follows:

(a) Granting summary judgment in favor of Huntington on Count I (Foreclosure of Preferred Ship Mortgageagainst the Vessel *in rem*) and Count II (Breach of Marine Note and Security Agreement against Kalish *in personam*);

(b) Awarding Huntington $1,048,084.77 in damages for the principal on the Ship's Mortgage;

(c) Awarding prejudgment interest in the amount of $8,275.76 and continuing to accrue at the Default Rate of 9.25% per annum until final judgment is issued;

(d) Awarding Huntington all reasonable attorneys' fees incurred in connection with this action;

(e) Awarding Huntington all substitute custodian fees and costs incurred in connection with the custody of the Vessel;

(f) Granting any and all other relief this Court deems just and necessary.

Dated: <u>January 9, 2026</u>

Respectfully submitted,

*/s/ Nicholas J. Zeher*
Nicholas J. Zeher, Esq. (Fla. Bar No. 1003565)
Serena A. Witter, Esq. (Fla. Bar No. 45216)
ROBERT ALLEN LAW
The Four Seasons Office Tower
1441 Brickell Avenue, Suite 1400
Miami, Florida  33131
Tel.:   (305) 372-3300

Fax:   (305) 379-7018
Email: nzeher@robertallenlaw.com
       switter@robertallenlaw.com
       litigation@robertallenlaw.com

*Counsel for Plaintiff*

## CERTIFICATE OF SERVICE

IT IS HEREBY CERTIFIED that a true and correct copy of the foregoing was served via the CM/ECF system to counsel for Defendant Stanley Kalish and intervenor Danielle Morron this 9th day of January 2026.

Respectfully submitted,

*/s/ Nicholas J. Zeher*
Nicholas J. Zeher, Esq. (Fla. Bar No. 1003565)
Serena A. Witter, Esq. (Fla. Bar No. 45216)
ROBERT ALLEN LAW
The Four Seasons Office Tower
1441 Brickell Avenue, Suite 1400
Miami, Florida 33131
Tel.:  (305) 372-3300
Fax:   (305) 379-7018
Email: nzeher@robertallenlaw.com
       switter@robertallenlaw.com
       litigation@robertallenlaw.com

*Counsel for Plaintiff*