**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF FLORIDA**

**IN ADMIRALTY**

HUNTINGTON NATIONAL BANK,                              Case No.: 0:25-cv-61018-WPD

      *Plaintiff*,

v.

M/Y SOMETHING ABOUT MERI, her engines, machinery,
tackle, apparel, boats, furniture, equipment,
rigging, freights, and all other necessary
appurtenances, etc., *in rem*, and STANLEY R. KALISH,
*in personam*,

      *Defendant(s)*.

_____/

**PLAINTIFF'S RESPONSE TO ORDER TO SHOW CAUSE [ECF NO. 300] AND**
**MOTION TO CONFIRM SALE TO SECOND-HIGHEST BIDDER**
**PURSUANT TO LOCAL ADMIRALTY RULE E(17)(D)**

Plaintiff Huntington National Bank (the "Bank"), by and through undersigned counsel, hereby responds to this Court's Order to Show Cause Why Court Should Not Stay the Judicial Confirmation of the Judicial Sale of the Vessel Upon the Posting of an Appeal Bond in the Amount of $550,001.10 by Danielle Morron [ECF No. 300] (the "OSC"), and respectfully shows that the requested stay should be denied in its entirety. The Bank further requests, in light of the high bidder's post-sale default, this Court confirm the sale to the Bank as the second-highest bidder at $500,000.00 pursuant to Local Admiralty Rule E(17)(d).

**I.  Preliminary Statement**

A material development affects the framing of the OSC.  The OSC notes the vessel was sold at the April 21, 2026 interlocutory sale for $500,001.00.  To date, however, the high bidder has paid nothing (neither no deposit at the time of sale nor the balance due April 28, 2026) and is

in default of the requirements of Local Admiralty Rule E(17)(a)(ii).  Because the high bidder has defaulted, no enforceable sale to the high bidder presently exists.   The Bank, which credit-bid $500,000.00 pursuant to authority granted in this Court's *Order Approving Report of Magistrate Judge; Overruling Objection* [ECF No. 249], stands as the second-highest bidder.

Local Admiralty Rule E(17)(d) addresses precisely this circumstance:

> The person who fails to pay the balance of the bid within the time allowed shall be deemed to be in default. Thereafter a judicial officer may order that the sale be awarded to the second highest bidder, or may order a new sale as appropriate. Any sum deposited by the bidder in default shall be forfeited . . . .

S.D. Fla. L. Adm. R. E(17)(d).  The Bank respectfully submits that the Court should exercise its discretion under this Rule to award the sale to the Bank as the second-highest bidder at $500,000.00.   This result conserves judicial resources, avoids the expense, delay, and value-erosion of a re-sale, and immediately fixes the proceeds available for satisfaction of any valid lien claims.

## II. Legal Standard

A stay pending appeal is "an extraordinary remedy" and "not a matter of right." *Nken v. Holder*, 556 U.S. 418, 427, 433 (2009) (citation omitted).  The party seeking a stay bears the burden of demonstrating: (1) a strong likelihood of success on the merits; (2) irreparable injury absent a stay; (3) that issuance will not substantially injure other interested parties; and (4) that the public interest favors a stay. *Id.* at 434; *Garcia-Mir v. Meese*, 781 F.2d 1450, 1453 (11th Cir. 1986).  The first two factors "are the most critical." *Nken,* 556 U.S. at 434.  "It is not enough that the chance of success on the merits be 'better than negligible.'" *Id.* (citation omitted).  Morron has not made and cannot make the required showing on any of the four factors.

### III.  Morron Has No Likelihood of Success on Appeal

***A.  The Eleventh Circuit Lacks Jurisdiction Because ECF NO. 293 is a Magistrate Judge's Order, Not a District Court Order, and Morron Has Not Sought Review by Judge Dimitrouleas as Required by Federal Rule of Civil Procedure 72.***

Morron's appeal is procedurally defective at the threshold.  The order Morron purports to appeal  (ECF No. 293) is an Order entered by United States Magistrate Judge Patrick M. Hunt, not by the District Court. *See* ECF No. 293 at 6. The motions before Judge Hunt were referred under 28 U.S.C. § 636(b) and were resolved by order rather than by report and recommendation, indicating that they were treated as non-dispositive matters under § 636(b)(1)(A) and Federal Rule of Civil Procedure 72(a).  Magistrate Judges Rule 4(a) of this District's Local Rules and Federal Rule of Civil Procedure 72(a) provide that a party objecting to such an order must file written objections with the District Judge in accordance with Rule.  Morron did not do so.

Instead, Morron filed a Notice of Appeal directly to the Eleventh Circuit. *See* ECF No. 297. That filing invokes 28 U.S.C. § 1292(a)(3), but § 1292(a)(3) confers appellate jurisdiction only over interlocutory orders of a district court, not over orders of a Magistrate Judge that have not yet been adopted, modified, or rejected by the District Judge. The Eleventh Circuit has held expressly that "[t]he law is settled that appellate courts are without jurisdiction to hear appeals directly from federal magistrates." *U.S. v. Schultz*, 565 F.3d 1353, 1359 (2009).  The court further emphasized that where a party fails to appeal a magistrate judge's order to the district court, the appellate court lacks jurisdiction to review the magistrate judge's ruling. *Id; Murphy v. Stacy*, 809 F. App'x 677, 681 (11th Cir. 2020) ("Thus, we have long held that where a party never appealed a magistrate judge's order to the district court, we lack jurisdiction to review the magistrate judge's ruling on appeal.")

The Order Morron is appealing (ECF No. 293) was entered on April 17, 2026.  Morron has filed no objections to same. The Eleventh Circuit therefore lacks jurisdiction over Morron's purported appeal under settled Eleventh Circuit law.  *Rhiner v. Sec'y, Fla. Dep't of Corr.*, 817 F. App'x 769, 780 (11th Cir. 2020). A stay cannot rest on an appeal that the Court of Appeals has no power to entertain.

On this ground alone, Morron's likelihood of success is not merely "negligible" under *Nken*, it is zero, because the appellate court has no jurisdiction to reach the merits.

**B.  *Even If Jurisdiction Existed, Morron's Voluntariness Argument Fails on the Record Because She Repeatedly Admitted a Preexisting Duty to the Vessel.***

Morron's emergency motion advances a single argument on the merits: ECF No. 293 misapplied the voluntariness element of a salvage claim. *See* ECF No. 296 at 2-3.  That argument fails on Morron's own filings.

The voluntariness requirement turns on whether services were rendered "in the absence of a legal duty or obligation." *Offshore Marine Towing, Inc. v. Gismondi*, 504 F. Supp. 3d 1349, 1355–56 (S.D. Fla. 2020). Magistrate Judge Hunt found voluntariness lacking based on Morron's *own* representation in ECF No. 19 that she had "a direct, vested interest in the subject vessel . . . due to a preexisting partnership agreement with Defendant" and that the partnership was "dually executed and explicitly known to the First Preferred Ship Mortgage holder since 2021." ECF No. 293 at 4-5 (quoting ECF No. 19 at 1) (emphasis original).  Magistrate Judge Hunt further relied on Morron's own Initial Flood Damage report, which established that the vessel was moored at Morron's home at the time of the casualty and that Morron, not a third-party salvor,  was the person notified by phone of the incident. *Id.* (citing ECF No. 128-1 at 3).

Morron's appellate argument that voluntariness "turns on the existence of a legal obligation — not inference, proximity, or post hoc characterization," ECF No. 296 at 2-3, mischaracterizes the basis of the order below. Magistrate Judge Hunt did not rely on "inference" or "proximity"; he relied on Morron's repeated, on-the-record admissions of a preexisting partnership duty to the vessel. Those admissions, made in Morron's own pleadings, are dispositive of the voluntariness inquiry and cannot be retracted on appeal.

In addition, Morron's purported salvage claim is independently barred (or, at a minimum, fatally weakened) by the two-year limitations period under 46 U.S.C. § 80107(c). *See* ECF No. 293 at 3 (citing *Crescent Towing & Salvage Co. v. M/V CHIOS BEAUTY*, No. CV 05-4207, 2008 WL 11353738, at *1 (E.D. La. July 7, 2008)). Morron concedes the alleged salvage effort "began in 2022," *see* ECF NO. 293 at 4, but did not assert any salvage lien in this action until well after that two-year window had run.

### C. Morron Has Adduced No Evidence of a Valid Salvage Claim.

Beyond the legal defects, Morron has never adduced competent evidence of the value of the alleged services, the agency relationships among purported salvors, or compliance with the special pleading requirements of Local Admiralty Rule E(3) for salvage claims. The mere recitation in her motion of a $1,011,539.05 figure (ECF No. 293 at 3) is unsupported.

### IV.  Morron Faces No Irreparable Harm Absent A Stay

Morron contends that, absent a stay, confirmation will "extinguish all maritime liens" under Supplemental Rule E(9), thereby mooting her appeal. ECF No. 296 at 2. That argument misreads both the rule and the established practice in admiralty.

Supplemental Rule E(9) does not extinguish liens; it transfers them to the sale proceeds, where they are adjudicated according to priority.  Any lienholder, including Morron if her lien were valid (it is not),  retains the right to assert that lien against the proceeds held in the registry of this Court pending further order. *See* ECF No. 249 ¶ 4(d) ("the proceeds of such sale, upon confirmation by the Court, be paid by the United States Marshal into the registry of this Court to await and abide further order of this Court"); 46 U.S.C. § 31326(b). The substitution of the proceeds for the vessel as the *res* is the foundational architecture of admiralty foreclosure practice; it does not generate irreparable harm.

A movant cannot manufacture irreparable harm by reference to a lien that has been adjudicated invalid.  *See* ECF No. 293 at 5 ("The undersigned now finds that Morron cannot establish, on the facts before this Court and for the reasons stated above, that her lien is indeed valid."). The asserted harm (loss of a lien claim Morron does not have) is illusory.

Equally important, Morron's purported "mootness" concern is overstated.  If the Eleventh Circuit (assuming arguendo it had jurisdiction) were ever to disturb ECF No. 293, the proceeds would remain in the Court registry pending further order, and the appellate court could fashion appropriate relief from those funds.  The sale's confirmation does not foreclose appellate review of the proceeds-distribution question; it merely fixes the dollar amount available for distribution.

### V.  The Balance of Equities Strongly Disfavors a Stay

The third stay factor (substantial injury to other interested parties) weighs decisively against Morron.  The Vessel has been in custodia legis for more than a year.  Custodial expenses, insurance, and dockage continue to accrue daily, all of which are senior administrative claims under maritime law.  Every day of delay further erodes the value of the security available to satisfy the Bank's preferred ship mortgage and any valid junior claims.

By contrast, denying the stay imposes *no* substantive injury on Morron, because (a) her lien has been adjudicated invalid, (b) any residual interest she might have would, in any event, attach to the proceeds, and (c) confirmation of the sale to the Bank as the second-highest bidder does not deprive Morron of any tangible right, it merely converts the *res* into liquid funds available for distribution under Court supervision.

In short, every interested party other than Morron (the Bank, the substitute custodian, the borrower, and the Court itself) benefits from prompt confirmation.   Confirming the sale at $500,000.00 fixes the proceeds at a known amount, halts the accrual of administrative claims that would otherwise diminish those proceeds, and clears the way for orderly distribution.   Granting a stay invites the opposite outcome on every dimension.

### VI. Morron Has Not Posted Appeal Bond and Has Not Complied with the Mandatory Prerequisites for Objecting to the Sale

In addition to the aforementioned reasons, Morron's Emergency Motion to Stay Confirmation of Judicial Sale [ECF No. 296] is also defective in two procedural respects that the Court should consider in resolving the OSC.

First, Morron has not posted, tendered, or offered any appeal bond. The OSC contemplates a stay upon the posting of an appeal bond in the amount of $550,001.10.  *See* ECF No. 300 at 1. As of the filing of this Response, no bond has been posted.   Morron's failure to tender any security underscores that her motion is more about delay than the protection of any cognizable interest. The Court should not be required to extend its protection to a movant who has refused to extend any protection of her own.

Second, and fundamentally, Morron has not paid the deposit required of any person objecting to a judicial sale under Local Admiralty Rule E(17)(g):

7

> Deposit of Preservation or Maintenance Costs. In addition to filing and serving written objections, any person objecting to the sale shall also deposit with the Marshal the cost of keeping the property for at least fourteen (14) days. Proof of the deposit with the Marshal's Office shall be delivered to the Clerk of the Court's Office by the moving party. The Court will not consider the objection without proof of this deposit.

S.D. Fla. L. Adm. R. E(17)(g) (emphasis added).  Morron's Emergency Motion to Stay Confirmation of Judicial Sale [ECF No. 296] is, in substance and effect, an objection to confirmation of the April 21, 2026 sale.  Morron has neither deposited fourteen days of preservation or maintenance costs with the Marshal nor delivered proof of any such deposit to the Clerk.  By the express terms of the Rule, the Court "will not consider the objection without proof of this deposit."

The Rule serves a substantive purpose directly implicated here.  The Vessel continues to accrue custodial expenses, dockage, and insurance costs each day it remains in custodia legis.  Local Admiralty Rule E(17)(g) ensures that a person who would halt confirmation of a judicial sale (and thereby continue to impose those carrying costs on the prevailing party and the Marshal) internalizes a portion of those costs as a precondition to being heard.   Morron's failure to make the required deposit is therefore not a mere technicality; it is a condition precedent that the Rule itself makes dispositive.

For these reasons, in addition to the substantive grounds set forth in Parts III through V above, the Court should decline to consider Morron's Emergency Motion and discharge the OSC.

### VII.  The Court Should Confirm the Sale to the Bank as the Second-Highest Bidder Pursuant to Local Admiralty Rule E(17)(d)

As explained in Part I above, the high bidder is in default.  Local Admiralty Rule E(17)(d) authorizes the Court, in such circumstances, to "order that the sale be awarded to the second highest bidder, or [to] order a new sale as appropriate."

Awarding the sale to the second-highest bidder is the more efficient course on this record. A re-sale would impose substantial costs and risks, requiring re-noticing under Local Admiralty Rule E(16), continued accrual of custodial fees in the interim, exposure to further deterioration of the Vessel, and the genuine risk (particularly given the Vessel's well-documented deteriorated condition) of a lower second-round price.

No party is prejudiced by confirmation to the Bank. Any valid lien claims attach to the proceeds, which will be the Bank's $500,000.00 credit bid.  Distribution priorities can be litigated in the ordinary course following confirmation.  Morron's position vis-à-vis any proceeds-based distribution is precisely the same regardless of whether the buyer is the high bidder, the Bank as second-highest bidder, or a re-sale buyer.

Local Admiralty Rule E(17)(d) codifies the Court's discretion to confirm a sale to the second-highest bidder and expressly authorizes the precise relief the Bank now requests.

The Bank therefore respectfully moves the Court for an order: (i) declaring the high bidder in default under Local Admiralty Rule E(17)(a)(ii) and (d); and (ii) confirming the sale to the Bank at $500,000.00, with the Bank's credit bid satisfied against its outstanding mortgage balance pursuant to ECF No. 249 ¶ 4(c).

## VIII.  Conclusion

For the reasons stated above, Plaintiff Huntington National Bank respectfully requests that this Court enter an order:

(1)   Discharging the Order to Show Cause [ECF No. 300] and denying Morron's Emergency Motion to Stay Confirmation of Judicial Sale Pending Appeal [ECF No. 296];

(2)  Declaring the high bidder at the April 21, 2026 interlocutory sale in default under Local Admiralty Rule E(17)(a)(ii) and (d); and

9

(3)  Confirming the sale of the Vessel to Plaintiff Huntington National Bank, as second-highest bidder, in the amount of $500,000.00, pursuant to Local Admiralty Rule E(17)(d) and the credit-bid authority granted in ECF No. 249 ¶ 4(c).

Dated: <u>April 28, 2026</u>

Respectfully submitted,

<u>/s/ Nicholas J. Zeher</u>
Nicholas J. Zeher, Esq. (Fla. Bar No. 1003565)
Serena A. Witter, Esq. (Fla. Bar No. 45216)
ROBERT ALLEN LAW
The Four Seasons Office Tower
1441 Brickell Avenue, Suite 1400
Miami, Florida  33131
Tel.:   (305) 372-3300
Fax:   (305) 379-7018
Email: nzeher@robertallenlaw.com
            switter@robertallenlaw.com
            litigation@robertallenlaw.com

*Counsel for Plaintiff*

**<u>CERTIFICATE OF SERVICE</u>**

IT IS HEREBY CERTIFIED that a true and correct copy of the foregoing was served via email to counsel for Defendant Stanley Kalish and non-party Danielle Morron this 28th day of April 2026.

Respectfully submitted,

*/s/ Nicholas J. Zeher*
Nicholas J. Zeher, Esq. (Fla. Bar No. 1003565)
Serena A. Witter, Esq. (Fla. Bar No. 45216)
ROBERT ALLEN LAW
The Four Seasons Office Tower
1441 Brickell Avenue, Suite 1400
Miami, Florida 33131
Tel.:   (305) 372-3300
Fax:   (305) 379-7018
Email: nzeher@robertallenlaw.com
        switter@robertallenlaw.com
        litigation@robertallenlaw.com
*Counsel for Plaintiff*

11