### IN THE UNITED STATES DISTRICT COURT
### FOR THE SOUTHERN DISTRICT OF FLORIDA

### IN ADMIRALTY

HUNTINGTON NATIONAL BANK,                              Case No.: 0:25-cv-61018-WPD

   *Plaintiff*,

v.

M/Y SOMETHING ABOUT MERI, her engines, machinery,
tackle, apparel, boats, furniture, equipment,
rigging, freights, and all other necessary
appurtenances, etc., *in rem*, and STANLEY R. KALISH,
*in personam*,

   *Defendant(s)*.

_____/

### PLAINTIFF'S SECOND MOTION FOR CONTEMPT AGAINST DANIELLE MORRON FOR VIOLATION OF PROTECTIVE ORDER

Plaintiff, Huntington National Bank ("Huntington"), respectfully moves this Court, pursuant to its inherent authority, Federal Rule of Civil Procedure 26, and Federal Rule of Criminal Procedure 42, for an order (i) holding dismissed intervenor Danielle Morron ("Morron") in civil contempt of the Court's Protective Order [ECF No. 144] and Amended Order Approving Report of Magistrate Judge [ECF No. 255], (ii) imposing compensatory monetary sanctions, including the attorneys' fees and costs incurred in addressing this latest violation, and (iii) referring Morron for criminal contempt proceedings under 18 U.S.C. § 401(3) and Fed. R. Crim. P. 42, and in support states as follows:

### Introduction

This is Huntington's second motion seeking to enforce the Court's Protective Order against Morron. The first such motion [ECF No. 177] was granted by Magistrate Judge Hunt's Report and Recommendation [ECF No. 226], adopted by this Court's Amended Order [ECF No. 255]. As a

result, Morron is now expressly prohibited from "communicating with the Bank or the Bank's attorneys in any manner regarding this case, except through properly filed court documents or with prior written approval from this Court." ECF No. 255 at ¶ 3(A) (emphasis added). The Court simultaneously dismissed Morron from the case as an intervenor under Federal Rule of Civil Procedure 24. Id. at ¶ 4.

That order could not have been clearer.  Yet on May 6, 2026, only two days after this Court summarily denied Morron's most recent improper filing (a Motion for Sanctions against the undersigned) as "frivolous" [ECF No. 314], Morron sent a lengthy text message directly to the personal cell phone of undersigned counsel, Nicholas J. Zeher.  (A copy of the text message is attached hereto as **Composite Exhibit "A."**).  The message has nothing to do with any "properly filed court document" and was not authorized by this Court.  It is a per se violation of the Court's no-contact order. Worse, its content is precisely the type of conduct the no-contact order was designed to stop: unsworn accusations of bank fraud and money laundering at loan origination, accusations that the substitute custodian damaged the vessel through negligence, allegations that undersigned counsel and a Huntington officer are attempting a corrupt "back door deal" to sell the vessel, threats of additional litigation and "uncapped damages," and an extortionate "settlement" demand conditioned on the surrender of property and the release of all claims.

Morron's disregard for the rule of law, and her intentional and continued violations of this Court's orders require this Court to take immediate action.

Civil contempt sanctions, including compensatory attorneys' fees, are now plainly warranted: the Court's prior decision to forgo a monetary sanction in deference to Morron's pro se status, and on the assumption that her dismissal would obviate further violations (*see* ECF No. 226 at 4) has been answered by Morron with renewed and escalating defiance.  The premise of the

Court's prior leniency no longer holds. In addition, because Morron's continuing willful disobedience is no longer susceptible to coercion through party-status remedies (she has no party status to lose), Huntington respectfully requests that the Court refer her to the United States Attorney for prosecution of criminal contempt under 18 U.S.C. § 401(3) and Fed. R. Crim. P. 42(a).

## RELEVANT FACTS OF THIS VIOLATION

### I. The Court's Standing Orders

1. On October 16, 2025, this Court entered a Protective Order [ECF No. 144] enjoining Morron from "making threats, using abusive language, or engaging in conduct designed solely to intimidate, annoy, embarrass, or otherwise harass any Party associated with this case," and from "submitting pleadings containing fabricated case law or non-existent legal authorities," and from violating the Federal and Local Rules. [ECF No. 144 at ¶¶ 1–3]. The Court warned that "Violation of any provision of this Protective Order may result in sanctions, including fines, attorneys' fees and costs, and such other relief as the Court deems just and proper." *Id.* at ¶ 4.

2. On December 19, 2025, Huntington moved to hold Morron in contempt for repeated violations of the Protective Order through threats, accusations of criminal conduct, defamatory statements, and bizarre intimidation tactics. [ECF No. 177].

3. Following an evidentiary hearing on January 8, 2026, Magistrate Judge Hunt issued a Report and Recommendation [ECF No. 226] concluding that Morron "had, indeed, continued to harass the Bank and its attorneys in violation of this Court's prior Order," that "Morron offered no real justification for this failure," and that an enhanced no-contact order was necessary. *Id.* at 2.

4. On February 3, 2026, this Court entered its Amended Order Approving the Report of Magistrate Judge [ECF No. 255], expressly ordering that:

Case No.: 0:25-cv-61018-WPD

> Danielle Morron is **PROHIBITED from communicating with the Bank or the Bank's attorneys in any manner regarding this case, except through properly filed court documents or with prior written approval from this Court**.

[ECF No. 255 at ¶ 3(A)] (emphasis added).

5. In the same Order, the Court dismissed Morron as an intervenor under Federal Rule of Civil Procedure 24, finding that she had failed to establish a viable claim to the vessel. [ECF No. 255 at ¶ 4].

6. The Protective Order [ECF No. 144] and the Amended Order [ECF No. 255] (collectively, the "Protective Orders"), remain in full force and effect.

### II. The Court's Most Recent Rejection of Morron's Improper Harassing Filings

7. On April 30, 2026, in further disregard of her dismissal from the case and the Court's prior orders, Morron filed a Motion for Sanctions Against Plaintiff's Counsel Nicholas J. Zeher and for Evidentiary Hearing [ECF No. 312], in which she leveled unsupported accusations of dishonesty against undersigned counsel relating to the April 21, 2026 judicial sale of the Vessel.

8. On May 4, 2026, this Court summarily denied that motion, expressly finding it "frivolous." [ECF No. 314].

### III. The May 6, 2026 Direct Personal Harassing and Threatening Text Message to Counsel

9. Two days later, on May 6, 2026, undersigned counsel Nicholas J. Zeher received a lengthy unsolicited text message on his personal cellular telephone from a number identified by Morron herself as her own. The message opens, "Hi Nick. This is Danielle." *See* Comp. Ex. "A" for the entire message.

10. Undersigned counsel did not provide his personal cellular number to Morron, did not invite the communication, and did not consent to it.  The Court has not authorized any such

-4-

communication. [ECF No. 255 at ¶ 3(A)] (requiring "prior written approval from this Court" for any out-of-court communication with the Bank or its counsel).

11.     The message concerns this case in every material respect. It refers expressly to "the winning bidder" at the recent judicial auction, to "registry funds," to "the bank guy bidding with an unliquidated credit bid," to "Kups" (the substitute custodian appointed by this Court), to "Kups' auction registration," to "the boat" and "the res," to "Kalish," to "Marc" (Marc Hoffman, Huntington Vice President), to "the bank" (Huntington), to "attorney fees," to "trial," to "appeal," and to "my salvage lien." Comp. Ex. A. There is no plausible reading of the message under which it does not concern "this case" within the meaning of ECF No. 255 ¶ 3(A).

12.     In addition to being a *per se* violation of the Court's no-contact order, the substance of the message independently violates the original Protective Order [ECF No. 144 ¶ 1] in numerous respects. Among other things, Morron:

   a.   Accuses undersigned counsel and a Huntington officer of conspiring to commit a corrupt "back door deal" to sell the Vessel to a non-party for $177,000 in derogation of the public auction process. Comp. Ex. A.

   b.   Accuses Huntington of having engaged in fraud and money laundering at loan origination, including "laundering etc at origination," the use of "monopoly money," "fake trade values to appease the [FDIC]," and the "Rick obey con." Comp. Ex. A.

   c.   Threatens additional litigation and "uncapped damages" against the Bank and counsel, references a "$40,000 retainer" paid for a separate suit against the substitute custodian, and warns that the Bank's position will deteriorate on appeal. Comp. Ex. A.

    d.   Demands an extrajudicial "settlement" conditioned on, among other things, the return of personal property, the issuance of a marine title to Morron premised on her already-rejected salvage lien claim (denied at ECF Nos. 137, 142, 223, 237, 293), the filing of an insurance claim by the substitute custodian, and the execution of a global liability waiver and non-disclosure agreement. Comp. Ex. A.

    e.   Threatens that the law firm "will ultimately take a hit to profitability," and disparages the firm's economic incentives, plainly designed to embarrass and intimidate. Comp. Ex. A.

13.    The text message is also extortionate in form. It conditions the cessation of Morron's harassment, her release of liability claims against the substitute custodian, her execution of an NDA, and her stated promise that none of the recipients "will ever see [her] name pop up again," upon delivery of valuable consideration—personal property, a marine title to the Vessel, and an insurance claim filing. Comp. Ex. A. Where those demands are not met, she warns: "I will win my case on appeal, but that too is costly for the bank," and "I'm the real liability risk of uncapped damages." Comp. Ex. A. The conditional structure ("on the condition that all my stuff . . . and title to the boat . . . be returned") is the hallmark of the very type of intimidation conduct the Protective Orders prohibit.

14.    The May 6, 2026 text message is not an isolated lapse. It is the latest entry in a sustained, post-Protective-Order course of harassment. It comes less than 48 hours after this Court told Morron, in unmistakable terms, that her most recent attempt to weaponize the docket against undersigned counsel was "frivolous." [ECF No. 314]. Rather than be chastened, Morron escalated, moving from improper court filings to a direct, unauthorized incursion onto undersigned counsel's personal cellular device.

15.     The message also confirms that Morron well understands the existence of the no-contact order.  She acknowledges that the substitute custodian "went ghost" rather than respond to her, references the very judicial-sale proceedings governed by this Court's recent orders, and uses the text channel precisely *because* the formal docket has been closed to her.  The selection of undersigned counsel's personal device, rather than any office line or counsel email, reflects a deliberate effort to circumvent the Court's mandated channel for any communication: the docket, with prior approval. ]ECF No. 255 ¶ 3(A)].

## MEMORANDUM OF LAW

### I. Legal Standard

There is "no question" that courts have the inherent power to enforce their orders through civil contempt. *Shillitani v. United States*, 384 U.S. 364, 370 (1966).  "The civil contempt power is essential to the enforcement of the judgments, orders, and writs of the courts, and consequently to the due administration of justice." *SEC v. Monterosso*, No. 07-61693-CIV, 2015 U.S. Dist. LEXIS 190700, at *8 (S.D. Fla. July 29, 2015).  "Obedience of judicial orders is of paramount importance and courts do not lightly excuse a failure to comply." *United States v. Hayes,* 722 F.2d 723, 726 (11th Cir. 1984).

Civil contempt is appropriate where "(1) the allegedly-violated order was valid and lawful; (2) the order was clear and unambiguous; and (3) the alleged violator had the ability to comply." *Ga. Power Co. v. NLRB,* 484 F.3d 1288, 1291 (11th Cir. 2007).  Civil contempt "may be imposed in an ordinary civil proceeding upon notice and an opportunity to be heard." *Serra Chevrolet, Inc. v. GMC*, 446 F.3d 1137, 1147 (11th Cir. 2006).  "The absence of willfulness is not a defense to a charge of civil contempt." *FTC v. Leshin*, 618 F.3d 1221, 1232 (11th Cir. 2010).

Federal courts also possess inherent authority to sanction conduct that "abuses the judicial process" through "harassment, repeated and endless delay, mountainous expense and waste of financial resource." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 45 (1991); *see also Flannery v. USAA Gen. Indem. Co.*, 2025 U.S. Dist. LEXIS 57969, at *3 (S.D. Fla. 2025).  Such sanctions can include attorneys' fees. *Chambers*, 501 U.S. at 45.  Courts in this District have applied this authority to address harassment of opposing counsel by *pro se* litigants. *See Flannery*, 2025 U.S. Dist. LEXIS 57969, at *3 (exercising inherent authority to address pro se litigant's threatening and offensive communications with opposing counsel).

Beyond civil contempt, willful disobedience of a court's lawful order is also punishable as criminal contempt under 18 U.S.C. § 401(3), which authorizes federal courts to punish "Disobedience or resistance to [a court's] lawful writ, process, order, rule, decree, or command." Federal Rule of Criminal Procedure 42(a) sets the procedure for prosecution of criminal contempt not committed in the court's presence: the court must give the alleged contemnor notice in open court, in an order to show cause, or in an arrest order, and ordinarily refers the matter to a non-interested attorney to prosecute. *See* Fed. R. Crim. P. 42(a)(2).  The essential elements of criminal contempt are that the court entered a lawful order of reasonable specificity, it was violated, and the violation was willful." *In re McDonald*, 819 F.2d 1020, 1024 (11th Cir. 1987).

## II. Morron Is in Willful Civil Contempt of the Protective Orders

### A.        The Protective Orders Are Valid, Clear, and Unambiguous.

The first and second elements under *Ga. Power Co. v. NLRB* are not in dispute. The Protective Order [ECF No. 144] and the Amended Order [ECF No. 255] were entered after full notice, briefing, and an evidentiary hearing on January 8, 2026.  [ECF No. 255 at 1]. Morron objected to the Magistrate Judge's Report [ECF No. 231], and the Court conducted a *de novo*

review and overruled her objections. [ECF No. 255 at 1]. The Eleventh Circuit and this Court have repeatedly recognized the validity of orders restricting harassing communications between litigants and opposing counsel. *See, e.g., Flannery*, 2025 U.S. Dist. LEXIS 57969, at *3.

The terms of the no-contact order are equally unambiguous. ECF No. 255 prohibits Morron from "communicating with the Bank or the Bank's attorneys **in any manner** regarding this case, except through properly filed court documents or with prior written approval from this Court." ECF No. 255 ¶ 3(A) (emphasis added). The phrase "in any manner" admits of no exception for text messages, and "properly filed court documents" plainly excludes a personal text message to a private cellular telephone.

### B. Morron Plainly Had the Ability to Comply.

Morron has demonstrated repeatedly that she is capable of using the docket:  she filed her Notice of Appeal [ECF No. 297], and her most recent (frivolous) sanctions motion [ECF No. 312] all without difficulty. Compliance with ECF No. 255 ¶ 3(A) required only that she refrain from contacting Huntington's counsel outside the docket. The May 6, 2026 text message demonstrates that she chose not to comply.

### C. The May 6, 2026 Text Message Violates Both Protective Orders.

The text message violates ECF No. 255 ¶ 3(A) on its face. It is a direct "communication[] with . . . the Bank's attorneys" "in [a] manner" "regarding this case," and it was neither a "properly filed court document" nor sent with "prior written approval from this Court." ECF No. 255 ¶ 3(A). That is the entirety of the analysis required to find a violation.

Independently, the substance of the message violates the original Protective Order at ECF No. 144 ¶ 1, which forbids "making threats, using abusive language, or engaging in conduct designed solely to intimidate, annoy, embarrass, or otherwise harass any Party associated with this

case." The message accuses Huntington of bank fraud and money laundering at loan origination; accuses undersigned counsel of orchestrating a corrupt "back door" sale; accuses the Court-appointed substitute custodian of negligence and physical destruction of the Vessel; threatens "uncapped" liability and continued litigation expense; and is structured as an extortionate settlement demand. Comp. Ex. A. These are precisely the categories of communication this Court already found to be sanctionable when it entered the original Protective Order and the enhanced no-contact order. [ECF Nos. 144, 226, 255].

### III. Enhanced Sanctions, Including Compensatory Attorneys' Fees, Are Now Warranted.

In recommending against monetary sanctions in connection with the first contempt motion, the Magistrate Judge cited two principal considerations: Morron's *pro se* status, and the expectation that her dismissal from the case would "obviate[] the need for further sanctions." [ECF No. 226 at 4] (citing *Schramek v. Jones*, 161 F.R.D. 119, 122 (M.D. Fla. 1995)). Both premises have now collapsed.

First, Morron's *pro se* status no longer cuts in her favor. The Court has now told her in three orders [ECF Nos. 144, 226/255, 314] that her conduct toward Huntington and its counsel is improper, and the most recent of those orders found her latest filing to be "frivolous" as a matter of law. She has been afforded every accommodation owed to a non-lawyer. She elected to escalate. While a *pro se* status may justify some procedural latitude, it does not give a litigant license to harass parties or counsel or defy the court's orders. *See Moon v. Newsome*, 863 F.2d 835, 837 (11th Cir. 1989) (pro se litigants are not exempt from compliance with court orders and rules).

Second, dismissal has not, in fact, obviated the need for further sanctions. To the contrary, dismissal appears to have liberated Morron from any sense of restraint. Since her dismissal she

has continued to file unauthorized papers (denied as moot at ECF No. 255 ¶ 4; denied as frivolous at ECF No. 314) and has now reached out to undersigned counsel directly on his personal device. The Court's prior leniency was extended on a record that no longer exists. Where, as here, lesser deterrents have demonstrably failed, monetary sanctions are appropriate. *See Chambers*, 501 U.S. at 45 (attorneys' fees among the inherent-authority sanctions available to deter litigation abuse).

Compensatory attorneys' fees in the amount actually incurred in (i) reviewing the unauthorized text message, (ii) preparing this motion, and (iii) attending any hearing on this motion are the minimum sanction commensurate with Morron's repeated, willful violations. Huntington will submit a fee declaration upon the Court's entry of an order finding contempt.

### IV. Referral for Criminal Contempt Under 18 U.S.C. § 401(3) Is Appropriate.

Civil contempt sanctions, while necessary, may not be sufficient. Civil contempt is fundamentally remedial and either coercive (seeking compliance) or compensatory (seeking to make the moving party whole). *Int'l Union, UMWA v. Bagwell*, 512 U.S. 821, 827–29 (1994). Where the contemnor's defiance is complete (where she has been removed from the case, has been told her filings are frivolous, has been ordered not to communicate, and yet still does) civil sanctions begin to lose their grip. Morron's own May 6, 2026 message previews her response to a fee award: she states that she "will not be paying [Huntington's] legal fees" regardless of outcome. Comp. Ex. A.

Criminal contempt under 18 U.S.C. § 401(3) addresses precisely this situation: "disobedience or resistance to [the court's] lawful . . . order." Each of the elements for criminal contempt is established here. The Protective Orders are (1) lawful, clear, and reasonably specific; (2) Morron violated them; and (3) the violation was willful: Morron knew of the no-contact order

and she deliberately chose to bypass the docket she has used freely for other purposes by texting undersigned counsel's personal cell phone.

This Court's docket reflects steadily escalating warnings, each of which Morron has ignored. The Court has now exhausted the calibrated remedies short of criminal contempt. A clear signal that further direct contact with undersigned counsel's personal device, and continued frivolous filings, may carry criminal consequences is the next available rung on the enforcement ladder, and is necessary to restore order to this proceeding.

## CONCLUSION

This Court has been patient with Morron through three separate iterations of escalating orders. She was warned. She was sanctioned. She was placed under a no-contact order. She was dismissed from the case. Her most recent filing was found frivolous. Two days later, she sent a personal text message to undersigned counsel's private cellular telephone repeating, in unsworn form, all the same harassing accusations the Court has already prohibited. The premise on which the Court declined to award fees in connection with the first contempt motion has been disproven by Morron's own conduct. Each accommodation extended to Morron has been met with further defiance and the calibrated remedies short of fees and criminal referral have demonstrably run their course.

WHEREFORE, Plaintiff Huntington National Bank respectfully requests that this Court enter an Order:

1. Finding Danielle Morron in civil contempt of the Court's Protective Order [ECF No. 144] and the Amended Order Approving Report of Magistrate Judge [ECF No. 255];

2. Awarding Plaintiff its compensatory attorneys' fees and costs incurred in connection with reviewing Morron's May 6, 2026 text message and preparing and prosecuting this Motion, in an amount to be established by separate fee declaration;

3. Issuing an Order to Show Cause why Danielle Morron should not be held in criminal contempt under 18 U.S.C. § 401(3) and Federal Rule of Criminal Procedure 42(a), and referring the criminal-contempt proceeding to the United States Attorney for the Southern District of Florida;

4. Imposing such additional coercive sanctions as the Court deems necessary to secure Morron's compliance with the Protective Orders, including a daily fine for any further violation; and

5. Granting such further relief as the Court deems just and proper.

Dated: <u>May 7, 2026</u>                                   Respectfully submitted,

<span style="margin-left:40%">/s/ Nicholas J. Zeher</span>
Nicholas J. Zeher, Esq. (Fla. Bar No. 1003565)
Serena A. Witter, Esq. (Fla. Bar No. 45216)
ROBERT ALLEN LAW
The Four Seasons Office Tower
1441 Brickell Avenue, Suite 1400
Miami, Florida 33131
Tel.:   (305) 372-3300
Fax:   (305) 379-7018
Email: nzeher@robertallenlaw.com
          switter@robertallenlaw.com
          litigation@robertallenlaw.com
*Counsel for Plaintiff*

## <u>CERTIFICATE OF SERVICE</u>

IT IS HEREBY CERTIFIED that a true and correct copy of the foregoing was served via the CM/ECF system to intervenor Danielle Morron and counsel for Defendant Stanley Kalish this 7th day of May, 2026.

Respectfully submitted,

/s/ *Nicholas J. Zeher*
Nicholas J. Zeher, Esq. (Fla. Bar No. 1003565)
Serena A. Witter, Esq. (Fla. Bar No. 45216)
ROBERT ALLEN LAW
The Four Seasons Office Tower
1441 Brickell Avenue, Suite 1400
Miami, Florida 33131
Tel.:    (305) 372-3300
Fax:    (305) 379-7018
Email: nzeher@robertallenlaw.com
        switter@robertallenlaw.com
        litigation@robertallenlaw.com

*Counsel for Plaintiff*